(97 App. Div. 535.)

### HAGEMEYER et al. v. SAULPAUGH.

(Supreme Court, Appellate Division, First Department. November 11, 1904.)

1. CONSTRUCTION OF WILL—TRUST—PERPETUITIES.

After directing the residue of his estate to be held in trust by his executors, testator directed distribution when the youngest child attained, or, if deceased, would have attained if living, the age of 21 years; the distribution to include all the property except such as was necessary to produce the annuity provided for the widow and two youngest children. In case of the widow's death before the time specified, the property held for distribution was to include the property which had been held to produce the annuities, but in either case distribution was postponed until the youngest child attained, or, if deceased, would have attained if living, the age of 21 years; and in either case the shares of the two youngest children were not to be paid to them until they respectively attained the age of 28. *Held*, that the trust, being measured by years instead of lives, was void, as offending against the statute of perpetuities.

2. TRUST—CURE OF INVALIDITY.

The provisions of a will creating a trust, which are void under the statute of perpetuities, are not cured by the provisions therein conferring power of sale on the trustees.

Submission of controversy without action between Mary Hagemeyer and others, as executors, and James M. Saulpaugh, on an agreed state of facts, pursuant to Code Civ. Proc. §§ 1279, 1280, and 1291. Judgment for defendant.

This controversy arises out of a contract for the sale of certain real estate situated on the south side of East Eleventh street, in the borough of Manhattan, city of New York. Plaintiffs, as surviving executors of the will of George Hagemeyer, deceased, entered into a contract with the defendant to sell and convey the said premises in fee simple absolute. At the time set for closing the contract both parties made tenders—the defendant of the purchase price, and the plaintiffs of a deed. The defendant refused to accept title tendered by the deed upon the ground that under the provisions of the will of George Hagemeyer, deceased, a valid power of sale did not exist investing the plaintiffs with power to execute a deed which would vest title to the premises in defendant in fee simple absolute. The particular grounds of the objection were that the power of sale contained in the will was an incident to the trust for the purpose of carrying the same into effect and making distribution of the estate; that the trust provisions of the will were void, as offending against the statute of perpetuities. The questions thus raised, therefore, require a construction of the will. George Hagemeyer died on June 14, 1892, leaving, him surviving, Mary Hagemeyer, his widow, and the following named children, George and Caspar Hagemeyer, Lizzie Walter (married), Martha J. Hagemeyer, who subsequently married on the 8th day of November, 1899. These children were all of full age at the time of the testator's death. His infant children were Mary, Emma, and Eva Hagemeyer, respectively of the ages of 20, 16, and 13 years. Eva became 21 years of age on the 20th day of November, 1900. All of these children and the widow are now living. Emma

---

¶ 2. See Perpetuities, vol. 39, Cent. Dig. § 37.

Hagemeyer was married on January 29, 1902. The total value of the estate at the time of testator's death was $357,299.50, $278,000 of which was real estate. After providing for the payment of his debts, and making a specific devise of a house and lot in the city of Brooklyn to his wife, and bequeathing to her certain household furniture, horses and carriages, and making a specific bequest of $500 to a niece, the will, in the fourth paragraph, provided as follows:

"Fourth: All the rest, residue and remainder of my estate, both real and personal, I give, devise and bequeath unto my executors hereinafter appointed and the survivors of them, In Trust Nevertheless, for the following uses and purposes, that is to say: They shall allow the share of the capital stock of the firm of George Hagemeyer and Sons, which shall belong to me at the time of my decease, to remain in the business until my youngest daughter Eva shall attain the age of twenty-one years, upon the following terms and conditions: my two sons George and Caspar, shall continue to conduct the business on behalf of themselves and of my estate, devoting their entire time thereto, and shall each receive out of the business a yearly salary of fifteen hundred dollars therefor, in addition to their share of the profits, which shall be proportionate to their shares of the capital stock. The business shall be continued to be carried on at the same place as at present upon ground belonging to me and shall pay to my estate the same rent which the business now pays, in addition to the taxes, water rents and assessments coming upon the property, as now paid by the said firm of George Hagemeyer and Sons:

"My executors (exclusive of my said two sons) shall not be compelled to devote any more time to the said business than shall be necessary to enable them to understand at all times its condition and the methods of its management, which they shall have the same right to do as if they were co-partners in such business. And if the net profits of such business shall not in any three consecutive years aggregate more than fifteen per cent of the capital stock invested, the part of the capital stock belonging to my estate, with the share of the profits to which the estate shall be entitled, shall be withdrawn from the business. The same may also be at any time withdrawn by my executors (other than my said two sons) in case the business shall not be conducted in a manner satisfactory to such other executors.

"All other personal estate in the hands of my executors shall be securely invested by my said executors, preferably upon bond and mortgage on improved real estate of ample value, or in good railroad bonds, whose market value shall not be less than par.

"And my remaining real estate in their hands in Trust as aforesaid, shall be rented by my executors for the best rent they can obtain, and out of such rents they shall pay all taxes, water rents and assessments coming thereon, and keep the buildings thereon in good order and repair and properly insured against loss or damage by fire.

"And out of the income of such trust estate, real and personal, my executors shall first pay to my said wife, Mary Hagemeyer, the sum of Seven thousand dollars yearly and every year during her natural life, commencing from the date of my decease, the same to be paid to her in instalments from time to time during each year, at such times and in such manner as she may request.

"My said executors shall also, out of such income, apply to the support, maintenance and education of my three minor daughters Mary (usually called Mame), Emma and Eva, such sums, from time to time, during their respective minorities as in the discretion of said executors may be necessary or proper, not exceeding Nine hundred dollars per annum for each of such minors.

"My said executors shall also, out of such income, pay to my daughter Martha, and also to my said daughters, Mary and Emma respectively, after they respectively attain the age of twenty-one years—to each a yearly stipend of Nine hundred dollars, until my said youngest daughter Eva shall become twenty-one years of age. If, however, either of my said four daughters shall marry before my said youngest daughter becomes twenty-one years of age, the aforesaid payment to her or for the benefit out of the income of my estate shall cease, and my executors shall thereupon pay over to such daughter so marrying, out of the principal of my estate, the sum of Eighteen thousand dollars, the same to be considered as an advancement to her out of her share

of my estate; or, in the discretion of my executors, Eight thousand dollars of such advancement may be paid to the husband of such daughter and the remaining Ten thousand dollars of such advancement be paid to such daughter personally; the same to be under her separate control. I also direct my said executors, in case either of my sons or daughters shall marry before my said youngest daughter becomes twenty-one years of age, to pay and expend for furniture, carpets and other house furnishing, for the benefit of such son or daughter, a sum not exceeding two thousand dollars; or, in their discretion, to pay directly to such son or daughter, the sum of Two thousand dollars for the purpose aforesaid.

"Upon my said youngest daughter Eva attaining the age of twenty-one years, the interest of my estate in the business hereinbefore directed to be carried on by my sons shall be withdrawn; and my executors, after retaining either out of my real or personal estate or both, a portion amply sufficient to produce an annual income of seven thousand dollars to be paid to my wife during her natural life, as hereinbefore directed, shall make a division of all the remainder of my estate then remaining in the hands of my executors, into seven equal shares, taking into account the advancements which I have already made to three of my children, to wit: Thirty thousand dollars to my son George; Thirty thousand dollars to my son Caspar; and Eighteen thousand dollars to my married daughter, Lizzie Walter; and also each advancement of Eighteen thousand dollars which may have been made as aforesaid upon the marriage of either of my other daughters, as hereinbefore directed; which several advancements shall be charged to each of my children respectively who has received the benefit of the same. And my executors shall thereupon pay over one of said seven equal shares (less the amount of his or her advancement as aforesaid) to each of my five other children, viz: George, Caspar, Lizzie, Martha, and Mary.

"But the share of each of my two younger children, Emma and Eva, (to wit, one of said equal seventh parts, less the advancement of Eighteen thousand dollars, if the same shall have been made for the benefit of such daughter, upon her marriage as hereinbefore directed), shall be retained by my said executors and kept securely invested until my said two younger daughters respectively attain the age of twenty-eight years. My said executors shall in the meantime, out of the income, pay to each of such daughters, the sum of Nine hundred dollars per annum—or, in case my said wife shall not be living, the sum of Fifteen hundred dollars per annum.

"And upon each of such two daughters attaining the age of twenty-eight years, my executors shall pay over to each the principal of her said share, together with all accumulations of interest thereon in the hands of said executors.

"And upon the decease of my said wife, the portion of my estate set apart and held as aforesaid by my executors to produce the annuity payable to my said wife, during her natural life as aforesaid, with all accumulations of income (if any) derived therefrom and the entire estate then remaining in the hands of my said executors, shall be paid over by my said executors to my said two sons and five daughters, equally, share and share alike; excepting that if my said wife shall die before my youngest child attains the age of twenty-eight years the provisions hereinbefore contained as to the time of the payment of the respective shares of my children shall control the time of the payment of their shares upon this final distribution.

"The time when my youngest daughter Eva attains the age of twenty-one years or becomes twenty-one years of age, shall be construed in this will (in case of her decease during her minority) to mean the time if living she would have attained that age."

These are the only provisions of the will necessary to be considered in disposition of the controversy. The will was duly admitted to probate as a will of real and personal property by the surrogate of Kings county on July 12, 1892, and letters testamentary issued to Mary, George, and Caspar Hagemeyer and William Kilian. Kilian died December 5, 1899, and John A. Hagemeyer, named in the will, never qualified as executor after the death of William Kilian.

Argued before VAN BRUNT, P. J., and HATCH, PATTER-SON, O'BRIEN, and LAUGHLIN, JJ.

Joseph Fettretch, for plaintiffs.
Charles C. Peters, for defendant.

HATCH, J. It is seen from the quoted paragraph of the will that the testator gives to his executors in trust all the rest, residue, and remainder of his entire estate, both real and personal, remaining after the specific devise and bequests first above mentioned. The will then provides that the business conducted by the testator and his sons in his lifetime should be carried on and the capital remain in the business until the youngest daughter,· Eva, should attain the age of 21 years, upon certain terms and conditions prescribed therein. Aside from the property and capital invested in the business, the remainder of the personal estate was required to be invested by the executors, and certain securities for investments were recommended. The real estate was directed to be rented. Out of the income of the trust estate, both real and personal, the direction is first to pay to the testator's wife, Mary Hagemeyer, the sum of $7,000 annually in every year during her natural life, commencing from the date of the decease of the testator. Provision is then made for the support, maintenance, and education of the three minor daughters, for certain advancements in the event of marriage, and then for a division of the estate upon the youngest daughter, Eva, attaining the age of 21 years, at which time the whole estate was to be distributed, save such portion of either real or personal property, or both, as should be amply sufficient to produce an annual income of $7,000, to be paid to the wife during her life. There was not, therefore, a creation of new and independent estates. It was also provided that the share of the two younger children, Emma and Eva, should be retained by the executors and kept securely invested until the two younger daughters respectively attained the age of 28 years, during which period each was to receive an income of $900 per annum, which was to be increased to $1,500 per annum in the event of the death of the wife prior to the expiration of the trust period. Upon their attaining the age of 28 years the sum invested was to be paid over to such children absolutely. Upon the decease of the wife that portion of the estate set apart for the purpose of producing the annuity of $7,000 per annum was to be paid over and distributed to the two sons and five daughters equally, share and share alike, unless the wife died before the youngest child attained the age of 28 years. The will in this respect provides:

"That if my said wife shall die before my youngest child attains the age of twenty-eight years the provisions hereinbefore contained as to the time of the payment of the respective shares of my children shall control the time of the payment of their shares upon this final distribution. The time when my youngest daughter Eva attains the age of twenty-one years or becomes twenty-one years of age, shall be construed in this will (in case of her decease during her minority) to mean the time when if living she would have attained that age."

By the scheme of this will two divisions of the estate by the
trustees was contemplated—one when the youngest child, Eva, be-
came 21 years of age, in which event the distribution was to be ab-
solute of all the property, save such as was necessary to produce
the annuity to be paid to the widow and the shares of the two
youngest children. The second division was to occur upon the
death of the widow, and that distribution embraced the trust prop-
erty which had been held by the executors for the purpose of pro-
ducing the annual income payable to the widow. But both distri-
butions were made dependent upon the arriving of age of the
youngest child, Eva, and by the express provision of the will such
time.was fixed and absolute as of a given date, namely, the 20th
day of November, 1900. If Eva died during her minority, the
period of distribution was postponed to this date, as the will pro-
vided that the date of distribution in such event should be con-
strued "to mean the time when, if living," she would have attained
that age. It seems clear that the testator contemplated that his
wife would survive the youngest daughter's coming of age, as he
made provision for the distribution of his estate when the daugh-
ter should arrive at 21, and also of the property in the trust pro-
vision for the wife's benefit upon her death; but each distribution
was made to depend upon a particular period of time, not measured
by any lives, for there could be, under the scheme of this will, no
division of this trust estate prior to the 20th day of November,
1900, whether the widow was living or not. This is clearly made
to appear in the exception which we have already quoted, following
the direction to distribute the estate upon the death of the widow,
and in express terms such distribution is controlled by the previous
direction to distribute, which was dependent upon Eva's having
attained her majority, or the arrival of the period when she would
have attained it if she had deceased. And as to the two younger
children, if they had not then attained the age of 28 years, no dis-
tribution could be made of their shares prior to such period. By
the first direction to distribute, which contemplated the continued
existence of the widow, the shares of the two younger children
were to go into a trust fund, the title to which remained in the
trustee, there to stay until they should respectively reach the age
of 28 years. So that the direction for distribution was in each
event dependent upon years—first, as to the elder children, upon
the lapse of time necessary to arrive at a period when Eva would
become 21, and upon the period when the two younger children
would become 28 years of age, respectively. Then follows the con-
struction which the testator required should be given to the will
in this respect, which shows it to have been made to depend upon a
fixed date, and not upon the lives of particular individuals or of
any. And during that period of time the trust estate was to re-
main in the trustees. It seems plain, therefore, that the duration
of these trust estates under either scheme of distribution, whether
upon the arrival of Eva at her majority prior to the death of the
widow, or upon the death of the widow prior to such period, or
upon the death of Eva before attaining her majority, the vesting

of the estates in the beneficiaries is made to depend upon a term of years. Such trust provisions are therefore void as offending against the statute of perpetuities. Upon this subject the authorities are so plain as to admit of no controversy. Haynes v. Sherman, 117 N. Y. 433, 22 N. E. 938; Jennings v. Jennings, 7 N. Y. 547; Staples v. Hawes, 39 App. Div. 548, 57 N. Y. Supp. 452; Brown v. Quintard, 177 N. Y. 75, 69 N. E. 225.

Nor does the power of sale which was vested in the trustees of the trust estate cure the invalid provisions of the will. The power thus given is for purposes of distribution, and the proceeds of any sale were subject in all respects to the execution of the trusts. The will is therefore condemned whether the trustees execute the power of sale or not, or whether the property used to carry out the terms of the trust provisions be real or personal. Brewer v. Brewer, 11 Hun, 147, affirmed sub nom. Bremer v. Penniman, 72 N. Y. 603. In no view, therefore, can the provisions of this will be sustained; and, reaching this conclusion, it necessarily follows that the plaintiffs are unable to convey a good title to the premises. The defendant is, therefore, entitled to judgment for the sum of $2,500, paid on the execution and delivery of the contract, with interest thereon from the 10th day of March, 1904, together with the further sum of $400, fees and expenses incurred in examining the title, together with the costs of this submission. All concur.

