"It is a rule, long recognized, that an accommodation indorser, or surety, is entitled to have the engagement of the principal debtor preserved, without variation in its terms, and that his assent to any change therein is essential to the continuance of his obligation. The reason of the rule is that his right must not be affected, upon the maturity of the indebtedness, to make payment and, by subrogation to the creditor's place, to, at once, proceed against the principal debtor to enforce repayment. Therefore it is that any agreement of the creditor, which operates to extend the time of payment of the original debt and suspends the right to immediate action, is held to discharge the nonassenting indorser, or surety; as the law will presume injury to him thereby. The creditor may arrange with his debtor in any way, which does not result in effecting either of these results."

The undertaking we are considering was not to pay the claim in suit, but the judgment that might be recovered. The sureties' obligation did not arise until the judgment was recovered. The indebtedness for which they were sureties had not matured. A judgment might never have been recovered. Until its recovery the sureties would be in no position to pursue the principal debtor. They could not control the creditor's litigation. He could conduct it in accord with his best judgment to accomplish his own purposes. The rule of exoneration did not apply because the reason for it did not exist.

The learned trial court was requested to charge:

"That, if the defendants, in good faith and in the exercise of reasonable judgment, were in doubt as to whether they could, by forcing or attempting to force the City Court case to trial, obtain judgment in June, they were not negligent in consenting to accept a stipulation for judgment and agreeing in consideration thereof, to postpone the entry of judgment to October 1st."

It declined so to charge and exception was taken. The court had charged that the giving of the stipulation had discharged the sureties, to which charge an exception was taken. These exceptions present reversible error.

There is no evidence that the defendants were negligent in their employment in the City Court action.

The defendants were entitled to have submitted to the jury the question whether an oral stipulation withdrawing the exceptions to the sufficiency of the sureties in the Municipal Court action was made between Ryall and Steuer, and, if the jury found it was, the defendants were entitled to a charge that no negligence could be found against them on that branch of the case.

The judgment and order should be reversed, and a new trial granted; costs to abide the event. All concur.

---

(161 App. Div. 458)

DAVIS v. McMAHON et al.

(Supreme Court, Appellate Division, First Department. March 20, 1914.)

1. WILLS (§ 697*)—CONSTRUCTION—ACTION.

One of the next of kin of a testator not interested under the will may maintain an action in equity for construction of the will involving the annulment of a trust and to declare a resulting trust in favor of the next of kin.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1671–1675; Dec. Dig. § 697.*]

2. PERPETUITIES (§ 7*)—TRUSTS—VALIDITY.

Where a testator devised corporate stock and other property to trustees to pay the income to one C. for life and to divide the surplus, if any, above a certain amount, between the testator's sister and nephew, and in the event of C.'s death before the expiration of 25 years to pay the income to the sister and nephew until the expiration of the 25 years when the trust property should be distributed, the trust is invalid as a perpetuity in so far as it seeks to suspend power of alienation for a fixed period of 25 years not being limited in accordance Personal Property Law (Consol. Laws, c. 41) §. 11, for not more than two lives in being.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 48, 54, 55; Dec. Dig. § 7.*]

3. WILLS (§§ 81, 448*)—CONSTRUCTION—CANONS.

That construction of a will which will sustain its validity in whole or in part and avoid either partial or total intestacy is favored, and therefore, where a will contains invalid and valid trusts which are independent, the invalid trusts may be annulled and the valid trusts sustained.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 201, 202, 964; Dec. Dig. §§ 81, 448.*]

4. WILLS (§ 822*)—CONSTRUCTION—ANNUITIES.

Where a testator directs the payment of an annuity in a fixed amount, it is a charge on the residuary estate without the intervention of a trust, and the lien may be discharged by payment of the present value of the annuity, irrespective of the validity of the trust; but where the annuity is not given absolutely, but is expressly limited to the income, there is no charge upon the residuary estate unless a valid trust is created to carry the gift into effect.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 2120; Dec. Dig. § 822.*]

5. PERPETUITIES (§ 6*)—VALIDITY—PERPETUITY.

A testator devised his real and personal property to trustees to collect the income and pay the same up to the amount of $2,100 to C. and to divide the surplus, if any, between his sister and nephew. The will also provided that the sister and nephew should receive the income in the event of C.'s death before the expiration of 25 years, and that at the expiration of that period or at the subsequent death of C. distribution should be made. Held, that while the trust, in so far as it attempted to suspend the power of alienation for a definite period of 25 years, was invalid, there was a valid trust in favor of C. and she was entitled to the income for life.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 4–47, 49–53, 56; Dec. Dig. § 6.*]

6. WILLS (§ 852*)—VALIDITY.

A testator devised his property in trust to pay the income to one C. for life with provisions that in case of her death before the expiration of 25 years the income should be paid to his nephew and sister if living, and that distribution should be made at the expiration of 25 years or at the death of C. should she survive that period. The will provided for distribution between the nephew and sister in case of their survival and for many other contingencies in case of their death without heirs of their bodies, etc. Held, that the 25-year period which suspended alienation being invalid under Real Property Law (Consol. Laws, c. 50) § 42, there was no valid disposition of the remainder; it being impossible to determine who would take at the expiration of that period.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 2167, 2168; Dec. Dig. § 852.*]

Appeal from Trial Term, New York County.

Action by Annie Davis against Cecil H. McMahon, as executor and trustee under the last will and testament of Henry E. Smith, deceased, and others. From judgment for defendants and dismissal of the complaint, plaintiff appeals. Reversed.

Appeal by plaintiff from a judgment adjudging the devise in the will of Henry E. Smith, deceased, of the remainder of his estate in trust to pay the net income thereof together with the dividends, if any, on capital stock of the Conservative Realty & Investment Company, to the extent of $2,100 per annum, to Marion Chase Currey for life to be valid, and dismissing the complaint upon the merits with costs.

The testator died on the 28th of February, 1912, leaving two sisters—the plaintiff and the defendant Florence J. Muchmore—claimed, asserted, and found to be his sole heirs and next of kin. The defendant Davis was the testator's nephew. The defendant Ward W. Muchmore is the husband of said Florence, and the two infants are their children. The defendant Currey was about 40 years of age on February 3, 1913, and was not related to the testator. In the first and second paragraphs of the will, the testator gave directions with respect to his funeral and the payment of his debts; and by the sixth he merely appointed Cecil H. McMahon and a trust company executors. The other provisions of the will are as follows:

"Third. I give and bequeath the eight shares of stock owned by me in the Conservative Realty & Investment Company (a corporation of the state of New Jersey with its principal office in the city of Newark in said state, as appears by the books of said company) to my trustees hereinafter named, in trust, to hold said shares until the expiration of twenty-five years from the date hereof, during which time they shall not sell, assign transfer said shares; and upon the further trust that they will cause as the holders of such stock the name of said Conservative Realty & Investment Company to be changed as soon as may be convenient after my death to the 'Estate of Henry E. Smith' if such change can then lawfully be made; and upon the further trust to vote from time to time upon said shares of stock, so that the corporation may not expend moneys or incur liabilities in the improvement of the properties known as Nos. 224, 226 and 228 Washington street in said city of Newark for the erection of a new building or buildings thereon, or the improvement of any building or buildings now or which may be hereafter erected on said properties, in any amount greater than will make the value of such building or buildings after such improvements are made more than one-third of the value of the lands upon which such buildings are erected at the time such improvements may from time to time be authorized by said company, the valuation of the lands to be arrived at, disregarding the fact that the buildings are there; and upon the further trust that they will vote upon said stock in such manner as to prevent the sale of any of the real estate of said company until the expiration of twenty-five years from the date hereof; and upon the further trust to vote from time to time for the election of Cecil H. McMahon of Newark aforesaid, for president and treasurer of said company to fill any vacancy caused by my death or otherwise, and thereafter so long as he may live and the trust created by this will continue, and to vote to fix the salary of the president and treasurer at one thousand dollars per year so long as Cecil H. McMahon fills those offices (I make this direction because Cecil H. McMahon has for years past been familiar with my business affairs). Subject to the limitations aforesaid, my said trustee may vote upon such shares of stock at any meeting of the stockholders of said company as they may deem best for the interests of my estate; the income from such shares of stock to be disposed of by my said trustees as hereinafter mentioned.

"Fourth. I give, devise and bequeath all the rest, residue and remainder of my estate, real, personal and mixed, to my trustees hereinafter mentioned, in trust, however, to sell and dispose of the same as they may deem for the best interest of my estate and to invest the same and keep it invested and to pay the net income therefrom together with the income from the shares

of stock of Conservative Realty & Investment Company, up to the sum of twenty-one hundred dollars, in each year, in monthly instalments as near as may be, to Marion Chase Currey, so long as she lives, the net income remaining from my entire estate after making the payments of twenty-one hundred dollars a year aforesaid to Marion Chase Currey, shall be divided equally between my sister Florence Muchmore, and my nephew, Norman Davis, until the division of the principal of my estate hereinafter directed, in case they shall live so long. After the death of the said Marion Chase Currey, all the net income from my estate shall be divided between my sister, said Florence Muchmore, and my nephew, Norman Davis, until the abovementioned division of my estate if they shall so long live. Upon the death of my sister, Florence Muchmore, the income hereby directed to be paid to her shall be paid to her husband, Ward W. Muchmore, if he survives the said Florence Muchmore, and if he dies before the said Florence Muchmore or before the said division of my estate, then the income hereby directed to be paid to the said Florence Muchmore shall be paid to the children of Florence Muchmore. Upon the death of my nephew, Norman Davis, the share or shares of income hereby directed to be paid to him shall be paid to Florence Muchmore, if she survives the said Norman Davis, or if she be dead, then to be paid to her husband, Ward W. Muchmore, if he survives her; and if he dies before her and upon his death before a division of my estate, then the income hereby directed to be paid to Norman Davis, shall be paid to the children of Florence Muchmore.

"Fifth. It is my intention that my trustees shall retain my estate as indicated above for twenty-five years from the date hereof and at the expiration of twenty-five years from the date hereof if the said Marion Chase Currey be then dead, or if she then be living, then upon her death after the expiration of said period of twenty-five years, my trustees shall divide my estate, real, personal and mixed, including the shares of stock in the Conservative Realty & Investment Company by whatever name said company may then be known between my sister, Florence Muchmore, and my nephew, Norman Davis, share and share alike if they then be living; if Florence Muchmore then be dead, one-half of my estate shall be paid and transferred to her children in equal shares and the other one-half of my estate shall be paid and transferred to my nephew, Norman Davis; and if both my sister, Florence Muchmore, and my nephew, Norman Davis, be dead at the time when my said trustees are directed to divide my estate, then I direct that my estate shall be paid and transferred one-half to the children of Florence Muchmore, and one-half to the children of Norman Davis, if there shall be any such then living, and if the said Norman Davis shall have died without leaving any children surviving him at the time of the division of my estate by my trustees as aforesaid, I direct them to pay and transfer the whole of my estate in their hands to such legal heirs of my sister, Florence Muchmore, as may then be living. For the purpose of making a proper division and transfer of my estate, as provided for in this paragraph, I hereby authorize and empower my trustees or the survivor of them to sell and convey such part of my estate, including the shares of stock aforesaid, as in their discretion they may deem proper."

The trust company duly waived and renounced its right to qualify as an executor and trustee, but the individual executor and trustee duly qualified. The estate consists of personal property only. The inventory and appraisement of the property left by the decedent shows that its total value was $22,528.70, and that the eight shares of stock of the Conservative Realty & Investment Company were appraised at $800, which was their par value. The property of the corporation consisted of five city lots in Newark, N. J., with improvements thereon which were mortgaged. The aggregate amount of the incumbrances was $113,500, and the executor estimated that the equity therein was of the value of about $125,000; but the income therefrom was insufficient to pay the current running expenses, and no dividend had been or was likely in the near future to be declared.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, SCOTT, and HOTCHKISS, JJ.

John Ewen, of New York City, for appellant.
Howard W. Ameli, of New York City, for respondent McMahon.
Thomas F. Murtha, of New York City, for respondent Currey.
John V. Judge, of New York City, for infant respondents Muchmore.

LAUGHLIN, J. [1] It is within the jurisdiction of a court of equity to entertain a suit at the instance of one of the next of kin of a testator not interested under the will for the construction of the will involving the annullment of a trust or other disposition of personal property by will and to declare a resulting trust in favor of the next of kin as against the executor who holds the property. Read v. Williams, 125 N. Y. 560, 26 N. E. 730, 21 Am. St. Rep. 748; Tonnele v. Wetmore, 195 N. Y. 436, 88 N. E. 1068; Kalish v. Kalish, 166 N. Y. 368, 59 N. E. 917. The executor and trustee, who is a member of the bar in New Jersey, testified that voting trust agreements with respect to capital stock are lawful in that state, and that there is no limitation with respect to the period for which they may be created. But we are not concerned with the validity or effect of the directions, with respect to the management of the corporation through stock control, given by the testator, by paragraph 3 of the will, to his trustees. If the trustee should fail or refuse to observe the directions, then those questions might arise between him and those beneficially interested in the stock; but they are not presented for decision now.

[2] We have merely to decide whether any attempted disposition of property by the testator is invalid. It is stated in the will that he gives and bequeaths this stock to his executors in trust for the period of 25 years. He not only attempted to make them voting trustees of the stock for that period, but he expressly authorized them to collect and distribute the income, if any, from the stock during that period and to pay the same to the legatee Currey so far as necessary to make up the amount of $2,100 given to her by paragraph 4, and to divide the surplus, if any, and all of it in the event of said Currey's death before the expiration of 25 years, between the testator's sister Florence and his nephew until the termination of the trust period of 25 years, with a proviso that on the death of Florence, her husband, if living, and if not, her children, should take her share, and if the nephew should die his share of such income was to go to the sister if living, and, if not, to her husband, and if he should not be living then to her children. In order to make his purpose with respect to the development of the corporation, for the future financial success of which he evidently had high hopes, he attempted to suspend the absolute ownership, which includes the power of alienation of the stock, for a period not limited by two lives in being, but for a definite fixed period of 25 years in any event in contravention of our statute against perpetuities. Personal Property Law, § 11; Hagemeyer v. Saulpaugh, 97 App. Div. 535, 90 N. Y. Supp. 228. The trust in one contingency was to be limited by the life of Mrs. Currey; but the testator expressly, clearly, and pointedly declared

it to be his intention that the trust should, even in the event of Mrs. Currey's prior death, continue until the expiration of 25 years. The will makes it as plain as meaning can be expressed that he intended to create a trust for the period of 25 years in any event, and since that is not a limitation to two lives in being it is void, at least in so far as it purports to be for 25 years. Herzog v. Title Guarantee & T. Co., 177 N. Y. 86, 69 N. E. 283, 67 L. R. A. 146; Matter of Willcox, 194 N. Y. 288, 87 N. E. 497; Haynes v. Sherman, 117 N. Y. 433, 22 N. E. 938.

[3-5] The learned counsel for the appellant contends that the testator attempted to create but a single trust and that it must all stand or fall together. Counsel for respondents argue, however, that, if the attempted suspension of absolute ownership for the period of 25 years be void, the trust may be sustained as one for the life of Mrs. Currey, on the theory that the trust provisions for her benefit are independent of and separable from the provisions for continuing the trust after her death until the expiration of the trust period of 25 years. The rule is well settled that that construction of a will, which will sustain its validity in whole or in part and avoid either partial or total intestacy, is favored (Kalish v. Kalish, supra); and therefore where a will contains one or more invalid trusts and one or more valid and independent lawful trusts, not forming an essential part of the general scheme of the will as a whole, the invalid provisions may be annulled and the valid ones sustained (Simpson v. Trust Co. of America, 129 App. Div. 200, 113 N. Y. Supp. 370, affirmed 197 N. Y. 586, 91 N. E. 1120; Matter of Willcox, supra; Central Trust Co. v. Egleston, 185 N. Y. 23, 77 N. E. 989; Benedict v. Webb, 98 N. Y. 460; Knox v. Jones, 47 N. Y. 389; Hooker v. Hooker, 166 N. Y. 156, 59 N. E. 769); and on the same theory invalid provisions which relate to and are connected with valid provisions, but not dependent thereon, will likewise be excised and the valid provisions to which they relate retained (Hascall v. King, 162 N. Y. 134, 56 N. E. 515, 76 Am. St. Rep. 302).

It is argued that the provisions for Mrs. Currey may be sustained as an annuity and charge upon the residuary estate, even though they cannot be sustained on the theory of a trust. If the testator directed the payment of an annuity in a fixed amount to Mrs. Currey, it would be deemed a charge on the residuary estate without the intervention of a trust, even though he directed it to be paid out of income (Clark v. Clark, 147 N. Y. 639, 42 N. E. 275; Dunham v. Deraismes, 165 N. Y. 65, 58 N. E. 789; People's Trust Co. v. Flynn, 188 N. Y. 385, 391, 393, 80 N. E. 1098), and the lien on the residuary estate might be discharged by payment of the present value of the annuity (Buchanan v. Little, 154 N. Y. 147, 47 N. E. 970; People's Trust Co. v. Flynn, supra); or sufficient of the residuary estate, if there were sufficient, might be set apart and retained by the trustee to produce and pay the annuity (Clark v. Clark, supra); but here the annuity is not given absolutely, but it is expressly limited to income and made dependent upon the amount and sufficiency of the income. It is not, therefore, a charge upon the residuary estate in the

sense that it may be paid out of the corpus thereof. The validity of the trust would seem therefore to be necessary to give Mrs. Currey the benefit of the provision the testator intended to make for her. A trust, however, for the life of Mrs. Currey to enable her to receive the income of the residuary estate to the extent specified in the will, is one which was clearly authorized by law, and the trustee may hold the legal title for the purposes of that trust, even though with respect to the remainder the testator died intestate and it passed to and vested in his next of kin. Kennedy v. Hoy, 105 N. Y. 134, 11 N. E. 390; Matter of Willcox, supra; Schlereth v. Schlereth, 173 N. Y. 444, 449, 66 N. E. 130, 93 Am. St. Rep. 616. On this theory, the testator lawfully disposed of the entire income of the residuary estate during the life of Mrs. Currey. She takes it all, unless it shall exceed $2,100 per annum, and the surplus, if any, over that amount goes to the nephew and sister, and, in the event of the death of either or both of them, to the substituted beneficiaries specified in the fourth paragraph of the will. Schermerhorn v. Cotting, 131 N. Y. 48, 29 N. E. 980.

It is as has been stated by counsel for appellant, that the trusts are entire and inseparable, and that therefore, under the well-settled rule (see Central Trust Co. v. Egleston, supra), all must stand or fall together. I am unable to agree with that argument. To sustain the trust for the benefit of Mrs. Currey does not conflict with any part of the scheme or plan of the testator with respect to the disposition of the remainder, for the provisions for her benefit are not dependent upon or interwoven with the other provisions; nor is there anything to indicate that the testator would not have so provided for her had he known that he could not dispose of the remainder as he did dispose of it; but, on the contrary, it would seem that to properly provide for her was his primary consideration. It cannot be reasonably inferred that he only intended that she should have the income of the residuary estate to the extent of $2,100 per annum during her life in the event that he could lawfully continue the trust for the period of 25 years if she should die sooner. It is manifest that, whether the law forbade or permitted the trust for 25 years, he intended to provide an annuity for this woman for life from the income of his residuary estate. Therefore giving effect to those provisions of the will designed to afford Mrs. Currey an annuity for the period of her natural life gives effect to the plain intention of the testator, and the fact that owing to his failure to follow the requirements of law we are unable to give further effect to the provisions of his will does not preclude the court from giving it effect as contemplated by the testator until the death of Mrs. Currey. See Kennedy v. Hoy, supra.

I am of opinion, therefore, that there was a valid trust created during the life of Mrs. Currey, but that the trust attempted to be created for the period of 25 years was void.

[6] Counsel for the executor respondent contends that, if the testator contemplated a trust for the period of 25 years which would be invalid, that provision may be disregarded and the trust sustained as

one for the life of Mrs. Currey, and the will upheld as a valid disposition of the remainder at that time, and counsel for all the respondents contend that in any event in order to sustain the will as a disposition of the residuary estate it should be construed as creating a trust only during the life of Mrs. Currey. As already observed, the intention of the testator to have the trust continued in any event for 25 years, no matter how long prior to that time Mrs. Currey may die, is quite plain, and it is equally plain that the testator has not attempted to dispose of the remainder until the expiration of the trust whether it shall terminate with death of Mrs. Currey after the expiration of the 25-year period or by the expiration of that period should she die before. Moreover, the remainder is contingent, and those who would take now if Mrs. Currey should die presently if the testator had provided for distribution on her death might not be the same persons as those who would take at the expiration of the 25-year period. If Mrs. Currey should die presently, the defendant Davis, the nephew, would take one-half the residuary estate; whereas, he may die before the end of the 25-year period prescribed in the will without leaving issue, and in that event, if the remainder were to vest at the expiration of the 25-year period as contemplated by the testator his sister, if then living, and if dead her children, would take the one-half that the nephew was to take if then living. If Mrs. Currey should die before the expiration of the 25-year period, and the testator's nephew and sister should survive her, and the disposition of the remainder could be sustained, they would take, and yet they might die within the 25-year period and leave none of the property to their issue who would have taken if the will were sustained as made by the testator.

There can therefore be no doubt but that, if the will could be sustained as made, the remainder would not vest until the expiration of the 25-year period, even though Mrs. Currey should die before that time, and therefore it could not be definitely known until the time for distribution who would take the remainder. Schlereth v. Schlereth, supra; People's Trust Co. v. Flynn, supra. If it were certain that identically the same remaindermen would take whether the remainder vested in possession at the death of Mrs. Curry or at the expiration of the 25-year period, then under the statute and authorities the will might be sustained as a valid disposition of the remainder. Real Property Law, § 42; Purdy v. Hayt et al., 92 N. Y. 446; Kalish v. Kalish, supra; Matter of Willcox, supra; Rice v. Barrett, 102 N. Y. 161, 6 N. E. 898; Knox v. Jones, supra. Since, however, by the clear and explicit provisions of the will, the remainder is contingent and it cannot be known who will take until the expiration of the trust which the testator directed should continue for 25 years in any event, the court cannot eliminate those provisions and decree that the remainder shall vest in possession upon the death of Mrs. Currey, for that would not be construing the will as made, but would in effect be construeing a will for the testator. Simpson v. Trust Co. of America, supra. The observations already made suf-

ficiently answer the contention that the will may be construed as creating a trust for the life of Mrs. Currey only.

It follows therefore that the judgment should be reversed, with costs to appellant and to the executors, payable out of the estate, and judgment should be entered in favor of the plaintiff to the effect that the trust in the fourth paragraph of the will is valid for the life of Mrs. Currey, and that the provisions thereof disposing of the income of the residuary estate during that period are valid, but that the further trusts with respect to income until the expiration of the 25-year period and the disposition of the remainder of the residuary estate are void, and that upon the death of Mrs. Currey the next of kin of the testator will be entitled to take in possession the residuary estate as intestate property. All concur.