In the Matter of the Application for a Construction of the Will of MARY MARGARETTA MANNING, Deceased.

Surrogate's Court, Albany County, March 11, 1929.

*Arthur L. Andrews*, for the petitioner.

*Philip J. Wickser*, for Pascal P. Fryer, Livingston Fryer and Margaretta M. F. Wickser.

*Martin T. Nachtmann*, for Edith L. F. Test and Ella A. F. Clark.

*John T. LeGraff*, for Alexander L. Fryer and Mary Margaretta Wood.

SCHENCK, S. The testatrix, by her will, attempted to trustee the greater portion of her estate, and the main questions here presented are (1) whether or not trusts that may be sustained were created or (2) a valid power in trust established. An application for the construction of the will is brought on by petition of the executor, and requests to construe have been filed by persons named as beneficiaries therein. In the judicial construction of the instrument the intention of the testatrix must govern provided such intention is a legal intention and not inconsistent with rules of law or statutory restrictions.

The estate consists of one parcel of real estate, located in the city of Albany, and personal property of a value of upwards of $1,000,000. The will which has been admitted to probate provides for the payment of debts and after making several specific bequests of comparatively small amounts of money and certain bequests of jewelry and other personal property, directs that the real estate be sold as soon as possible for full value, " and the proceeds added to other assets of which I may die seized all of which are to be held in trust by my executors as and for the purposes hereinafter provided."

By clause " fifth " testatrix gives to the four children of her brother, Alexander Livingston Fryer, naming them, " one-third of my residuary estate, share and share alike, each one-fourth of said one-third, subject to the terms and conditions of payment hereinafter made and provided."

By clause " sixth " she likewise bequeaths to the three children of another brother, Robert Livingston Fryer, naming them, " one-third of my residuary estate, share and share alike, each one-third of said one-third, subject to the terms and conditions of payment hereinafter made and provided."

The remaining clauses of the will appear to express the dominant purpose of the testatrix and read as follows:

" *Eighteenth.* My executors are directed to secure all stocks and bonds that may be in my Safe Deposit box, now in the vaults of the City Safe Deposit Company, 100 State Street, Albany, New York, or in my possession, or wherever any may be found belonging to me at the time of my demise, and invest and keep invested all such stocks and bonds in such way as in their judgment they may deem to be to the best interests of the beneficiaries hereunder; they will also, in the same manner, invest the proceeds from the

sale of the house and lot at 153 Washington avenue, Albany, New York, in such securities or bonds as they may deem safe and profitable; the income from all sources no matter where derived, to be used to create a Trust Fund, to be disbursed in the payment of the bequests herein directed to be paid in manner following, except in those cases as herein otherwise expressly stipulated and provided for, to wit:

" The interest only of the above trust fund is to be paid annually for five years to the beneficiaries, and in the proportion named in Clause Fifth and Clause Sixth above stated.

" In the event of the death of any beneficiary without issue, his or her share of said bequest shall revert to the main Trust fund and be shared by the survivors as provided in said Clause Fifth and Clause Sixth. In the event of any beneficiary leaving issue, such child or children shall receive the share said parent would have received if living.

"*Nineteenth.* At the end of five years after my demise I direct my Executors to divide all moneys or stocks then in the hands of said Executors according to the provision made and provided in Clause Fifth and Clause Sixth, and pay to then living survivors of my said brother Alexander Livingston Fryer and the late Robert Livingston Fryer. The beneficiaries may have the privilege of accepting cash or stock or other security in settlement in full as they may elect.

" *Twentieth.* In the event of the death of any beneficiary or beneficiaries the share or shares of such deceased shall revert to the Trust Fund herein created, and be shared by the survivors in the proportions as provided herein in Clause Fifth, Clause Sixth and Clause Eighteenth."

It would appear that testatrix attempted to create a trust based on years and not measured by any life or lives in being at the time of testatrix's death. It is well settled as a matter of law that where the scheme of distribution is based on a period of time and not measured by a life or two lives in being at testatrix's death the trust thereby attempted to be created is invalid. (*Matter of Hitchcock*, 222 N. Y. 57; *Matter of Wilcox*, 194 id. 288; *Kalish* v. *Kalish*, 166 id. 368; *Davis* v. *MacMahon*, 161 App. Div. 458; affd., 214 N. Y. 614.)

The testatrix's express direction calls for a division of a portion of her property at the end of five years among four persons mentioned in clause " fifth " and among three persons mentioned in clause " sixth." The will speaks as of the time of testatrix's death, and whether or not it violates the statute against perpetuities must be determined as of that date. All of the persons named in clause

"fifth" and in clause "sixth" as children of brothers of testatrix are living. Here then is an attempt to create a trust for the benefit of seven lives in being which obviously is in violation of the statute.

Judge CRANE, writing the opinion for the court in *Matter of Durand* (250 N. Y. 45), said: " If the dominant purpose is the creation of a single trust to continue during more than two minorities, absolute ownership is illegally suspended and the trust in its entirety is void, even though in some contingencies it may end within the statutory term. (*Matter of Horner*, 237 N. Y. 489.) In some instances it has been possible to disregard that portion of the will which rendered the trusts illegal, and preserve the rest. (*Matter of Trevor*, 239 N. Y. 6; *Matter of Horner*, *supra*.) These cases express no new rule, but merely apply long-standing and well-recognized rules to new facts. The dominant, underlying principle in all these cases is to carry out as far as possible within the meaning of the statute, the intention of the testator. If we can read into a will an intention to preserve any part of it, even with the illegal portions stricken out, the court will do so. In such a case we try to determine whether the maker of the will would have created the trust if all his express purposes could not be accomplished. This is not strictly law; it is a matter of good judgment, the judgment of men who according to our judicial system must in the last analysis determine the question. In declaring a testator's intention, however, the courts are limited to the words which the testator, himself, has used in his will."

The intention of a testator must be found from the language of the will and if the language is plain, technical rules are not to be invoked on the theory that the testator did not mean what he said, or to supply alleged omissions to provide for this, or to safeguard against that. (*Matter of Buechner*, 226 N. Y. 440.)

As expressed by Mr. Jessup, in Jessup-Redfield Surrogate's Practice (1925 ed. § 477): " The question in expounding a will is not what the testator meant, as distinguished from what his words express, but simply — what is the meaning of his words? In other words, the inquiry, in each case, must be what provisions has the testator intended to make for the disposition of his estate, and not whether he intended to dispose of his estate according to the statutory rules governing testamentary dispositions."

Again, as Judge CARDOZO said in *Matter of Buechner* (*supra*): " We need no canon of construction * * * except, indeed, the primary one, to which all others are subordinate, that the intention of the testator is to be sought in all his words, and, when ascertained, is to prevail."

To find that the dominant purpose of the testatrix was other than

the creation of a single trust would necessitate the supplying of words other than those used by the testatrix, and as the Court of Appeals has said, " the courts are limited to the words which the testator, himself, has used in his will."

It is contended by Mr. Wickser that testatrix intended not a single trust for the benefit of seven persons but a separate trust for each of seven persons, and that this being the intent of the testatrix it should be found that seven distinct and valid trusts have been created. It is a well-settled principle of law that courts will endeavor to avoid intestacy for the obvious reason that the mere making of a will is a presumption against intestacy, and as well will preserve such valid parts of a will as can be separated from those that are invalid without defeating the general intent.

But the purpose of testatrix expressed in clause " eighteenth " indicates that it was her intention to create a single trust from which interest only should be paid annually to the seven beneficiaries for the period of five years. None of the seven persons named had the right or power to alienate during that period under any contingency, and testatrix clearly intended from the words used that they should not have such power. At the expiration of five years, and in no event sooner than that could this property be distributed or disposed of, for clause " twentieth " provides that in the event of the death of any beneficiary or beneficiaries " the share or shares of such deceased shall revert to the ' Trust Fund ' herein created, and be shared by the survivors in the proportions as provided in Clause Fifth, Clause Sixth, and Clause Eighteenth."

And if the creation of a single trust for a period of seven lives was the dominant purpose of the testatrix the trust is void. (*Matter of Horner*, 237 N. Y. 489.)

The whole scheme as expressed by testatrix's language contained in the will would seem to preclude any division of the main trust attempted to be created until the expiration of five years in any event, for clause " nineteenth " provides that at the expiration of five years after the death of testatrix her executors shall divide all moneys or stocks according to the provisions of clauses " fifth " and " sixth " and pay the same to the then living survivors. Should all but one of the seven persons named die prior to the termination of the five-year period, no part of the fund would be liberated, but there would still be a suspension of alienability until the expiration of the five years.

Where a trust for the benefit of several persons is held in one fund it is necessary for the purpose of holding that they constitute separate and independent trusts; that each part of the principal fund should be liberated from the trust fund upon the termination of the lives

in being at the death of the testator for which the trust is held, and also to find from within the will itself that such was the intention of the testator. (*Leach* v. *Godwin*, 198 N. Y. 35.) The scheme will not permit of a finding that under any circumstances the share of any beneficiary would be liberated within five years, and to be valid the trust must be so limited that in any event it will terminate absolutely within the statutory period. (*Matter of Wilcox*, 194 N. Y. 288.)

Nor is a violation of the statutes against perpetuities cured by the happening of fortuitous circumstances by reason of which no illegal suspension of absolute ownership is effected, for the validity of an attempted suspension of such absolute ownership is to be determined not by the event, *but by the possibility* as of the date of death. In determining the application of the statutes against perpetuities the courts are concerned not with the actual conditions as they now exist but what may happen, and if absolute ownership is illegally suspended the trust is void even though in some contingencies it may end within the statutory term.

The second question to be considered is whether the will creates a power in trust. Counsel for the executor contends that assuming that the trust is invalid as violating the law against perpetuities, the will may nevertheless be sustained as a power in trust. It is urged that testatrix intended to relieve her executor from the responsibility of immediately converting her estate into cash which might result in great sacrifice, and, therefore, gave to her executor a time which she deemed sufficient to enable it to convert the assets into cash without loss or injury to her estate. It is pointed out that testatrix was guarding against the contingency of a depression in real estate and securities, and for that reason postponed the time for making a disposition of her property. The fault of this reasoning is to be found in the language of the will itself, for in clause " second " testatrix directs that her house at Albany (and it is stipulated that that is the only real estate she owned at the time of her death) be sold " as soon as possible for full value and the proceeds added to other assets of which I may die possessed, all of which are to be held in trust by my executors, as, and for the purposes hereinafter provided." Then in clause " third " she makes a specific bequest of $1,000, half of which is to be paid at the end of the first year after her demise and the other half at the end of the second year. Again, in clause " tenth," clause " thirteenth," clause " fourteenth " and clause " fifteenth " she makes bequests of cash payable one year after death, and in clause " eighteenth " she directs her executors " to secure all stocks and bonds that may be in my Safe Deposit box, now in the vaults of the City Safe Deposit Company, 100 State

Street, Albany, New York, or in my possession, or wherever any may be found, and invest and keep invested all such stocks and bonds in such way as in their judgment they may deem to be to the best interests of the beneficiaries hereunder," the income to be paid annually for five years to the beneficiaries. A power is an authority to do any act which the grantor might himself lawfully perform, but when the object of a power is unlawful the power is void. Here the sale of the real estate is a part of the general trust scheme, and if the trust fails the power is void. In other words, the validity of the power of sale is dependent upon the validity of the trust term created by the will. (*Benedict* v. *Webb*, 98 N. Y. 460; *Sanford* v. *Goodell*, 7 Misc. 334, 339; *Dana* v. *Murray*, 122 N. Y. 604.)

Nor can I find that a power of sale of the real estate alone given under clause " second " may be sustained, as the power is quite inseparable from the trust, and any distribution of the proceeds of the sale of this designated real estate would result in a distribution of a portion of the estate in disregard of the trust provisions of the will. (*Matter of Hitchcock*, 222 N. Y. 57; *Hagemeyer* v. *Saulpaugh*, 97 App. Div. 535; *Matter of Toplitz*, 191 id. 477.)

The entire scheme of the will precludes the finding that this claimed power of sale survives. In *Matter of Hitchcock* (*supra*) the trust provisions of the will were held invalid as offending the statutes against perpetuities. CHASE, J., writing for the court, says: " The power claimed to be given to the executors * * * would result in a distribution of the estate in disregard of the trust. Such power does not in any way sustain the trust."

Again, in *Sweeney* v. *Warren* (127 N. Y. 426) the court said: " When a testator authorizes his executors to sell and convert into money all or a part of his realty for a specific purpose, which fails, or is accomplished without a conversion, the power is extinguished and the land cannot be sold by virtue of it or treated as money, but it descends to the heir unless it is devised."

The testatrix has directed a sale of her real estate and the application of the proceeds to a particular purpose, *i. e.*, to a trust measured by a period of time and not measured by lives in being at the time of her death. The trust being invalid the power of sale becomes ineffective and the executors are unable to convey a good title.

The dominant purpose which the testatrix had in mind has failed, and nothing remains as to the portion of the estate involved in the trust scheme but intestacy. As Judge CRANE writes in *Matter of Durand* (*supra*): " The courts must leave it as if there were no will. No power of revision of wills is intrusted to the courts. In the absence of a disposition by will the statute, not the court, provides for the disposition of the estate."

Following what appears to me to be the rules of law applicable to the construction of wills, and mindful of the fact that every case of this character must be decided upon its own particular circumstances, I reach the conclusion that the will should be construed as follows:

1. The legacy to Charles Livingston Fryer in clause "third" lapsed by reason of his death prior to that of testatrix.

2. The legacies in clauses "seventh," "eighth," "ninth," "tenth," "eleventh," "twelfth," "thirteenth," "fourteenth" and "fifteenth" are valid.

3. Clause "sixteenth" is invalid, for the reason that no detailed memorandum of any kind referred to in said clause was attached to the will or made a part thereof.

4. Clause "seventeenth" is void for indefiniteness and incompleteness.

5. The direction to executors to sell the real estate located on Washington avenue, Albany, N. Y., as set forth in clause "second," is void.

6. That the trusts attempted to be created by clauses "fifth," "sixth," "eighteenth," "nineteenth" and "twentieth" are void as violating the statutes against perpetuities.

7. That after payment of testatrix's debts, the legacies herein declared valid and the expenses of administration, testatrix died intestate as to the residue of the estate which passes pursuant to provisions of statute to the persons hereinafter named as her sole heirs at law and next of kin in the following proportions, to wit:

To Mary Margaretta Wood, Ella A. F. Clark, Edith L. F. Test and Alexander Livingston Fryer (all children of testatrix's brother Alexander Livingston Fryer), to each a one-seventh portion thereof;

To Pascal Pratt Fryer, Livingston Fryer and Margaretta M. F. Wickser (all children of testatrix's brother Robert Livingston Fryer), to each a one-seventh portion thereof.

Decree may be entered accordingly.