In the Matter of the Estate of ROBERT W. DE FOREST, Deceased.

Surrogate's Court, New York County, March 15, 1933.

*Robert D. Elder*, for Frances De Forest Stewart.

*Cotton, Franklin, Wright & Gordon*, for the Adirondack Mountain Reserve.

*Davis, Polk, Wardwell, Gardiner & Reed*, for the Metropolitan Museum of Art.

*William A. W. Stewart*, special guardian.

*De Forest Brothers*, for the executors.

*Root, Clark & Buckner*, for the American Federation of Arts.

FOLEY, S. Certain questions as to the construction of the will are raised in this accounting of the executors. At least one of them is novel — May a business corporation be the beneficiary of a trust? The testator was a distinguished lawyer of long experience in wills and estates. His own will, like that of Samuel J. Tilden and other eminent lawyers, has not escaped the doubts of interpretation and the hazards of litigation.

(1) By the second and fourth codicils to his will the testator gave to his executors, in trust, the sum of $100,000 with certain directions to pay the income or principal, in whole or in part, to the " Adirondack Mountain Reserve." The " Adirondack Mountain Reserve " is a business corporation authorized, among other things, to buy and sell real estate, to cut timber, manufacture lumber and sell the same, and to mine and sell ores. In connection with the holding of the real estate, owned by the corporation in Keene Valley in this State, its stockholders, and others associated with them, have conducted a club of restricted membership in the nature of a country club and known as the " Ausable Club." The stockholders, members and subscribers enjoy the privileges of the club and the use of the real estate owned by the corporation. Certain purposes of this corporation are stated to be the protection of forests and lakes from commercial development. These purposes, though commendable, confer no direct benefit on the public in general.

The testator set forth in the codicil that his " purpose is to preserve the forests, lakes and mountains of the Upper Ausable Valley in their wild and natural condition under the policy set forth in the present by-laws of the Reserve, or as these by-laws may be hereafter amended." He expressed the wish that the fund be not used " for current expenses " but provided that it be utilized " for the maintenance and improvement of the Reserve." The

terms of the trust further provided that it shall continue, unless sooner terminated, during the lives of the testator's two sons. A power to terminate, but not absolute in form, is given to the executors. If the power be exercised the testator directs that the balance of the fund shall become part of the residuary estate. In the event that the trust is continued during the full period of two lives, there is no disposition of the remainder, but under the usual rule of construction, it would pass to the residue as undisposed property. (*Matter of Cole*, 235 N. Y. 48.) The residuary estate was placed in trust for the life of the widow, with contingent remainders to his children or issue. It will be seen that whether the trust be terminated under the terms of the will or the fund passes at the death of the survivor of the two sons, it will in either event become part of the residue. Thereby it will have passed through an illegal period of three lives.

Certain questions of construction arise out of the situation. (a) Is the trust a charitable trust which may be sustained regardless of the unlawful trust period provided in the scheme of the testator? (b) Is it void because a business corporation was named as *cestui?* (c) If it is not void for the latter reason, may the trust be sustained in part, the third life eliminated and the trust permitted to continue for the lawful term of two lives? In other words, may the valid portions, if any, of the plan be saved and the illegal ones excised? I hold that the trust is not a valid charitable trust. The " Adirondack Mountain Reserve," the corporation named as *cestui* here, is essentially a business corporation. It is privately operated for private enjoyment. Notwithstanding the praiseworthy design, which is indicated by the testator in his will, the very form of the corporation emphasizes its non-charitable character. It is stated by Judge LEHMAN in *Matter of Frasch* (245 N. Y. 174, 181, 182), with respect to the meaning of the following words in the statute, " religious, educational, charitable or benevolent uses "—" No new conceptions of public benefit may, however, enlarge such words to include a *use* of the trust property for private profit or benefit. Doubtless the dominant purpose in the creation and management of a business corporation may occasionally be the advancement of the public welfare. None the less, where the income of the corporation may be applied to the profit of the founders, ' business has a beginning and charity an end.' (*Butterworth* v. *Keeler*, 219 N. Y. 446.) * * * Benevolent motive or a purpose to confer a general benefit does not bring a trust within the terms of the statute if the trust permits a use which is ' personal, private or selfish.' " In determining whether or not a gift is for a charitable purpose " the question is whether the trustee

or the corporation is bound to apply it to charitable purposes only."
(CRANE, J., in *Matter of Beekman*, 232 N. Y. 365, 370.)  If part or
all of the trust fund here were applied to the use of the corporation
for the purchase of additional land, the land might become, upon a
sale, a source of profit to the corporation and its stockholders.  It
might also be leased with resultant profit to the corporation.  The
timber or ore taken from it might be a subject of sale.

We are not concerned here with the validity of trusts for the
general purpose of preserving forests or the scenic beauty of lands
or for parks or parkways.  Where a trust is created for those
purposes and the property is dedicated to the general public use
it is undoubtedly valid as a charitable trust.  The facts are different
here for the restricted private use and the element of possible
profit destroy its charitable character.

In my opinion there is another fatal defect in the validity of
this trust.  The *cestui*, the " Adirondack Mountain Reserve,"
has not been shown to have been specifically authorized by statute
and its charter to become a beneficiary of a trust.  We may even
assume that the special act under which it was incorporated or the
general statute (Gen. Corp. Law, § 14, subd. 3) may authorize it
to acquire property for its corporate purposes, by devise or bequest.
But the grant of that authority does not include the right to take
as a *cestui*.  The definition of the word " bequest " may not be
unreasonably extended, in its application to corporations, to include
a benefit under a continuing trust.  This specific question was
decided by the Court of Appeals in *Matter of Griffin* (167 N. Y. 71).
There the gift under the will was to one corporation in trust for a
public academy, an incorporated educational institution.  The first
corporation could not take because it was not authorized to act as
trustee.  The second or beneficiary corporation, although an
educational institution, was held to be likewise disqualified as a
*cestui*.  With respect to it Judge GRAY said (at p. 78): " It was
legally capable of taking and holding a bequest of property for
any of its educational purposes, or as specified in chapter 318 of
the Laws of 1840; but it was not given capacity *to become the bene-
ficiary of a trust.*  [Italics mine.]  In *Adams* v. *Perry* (43 N. Y.
497), the bequest was to trustees to invest and pay the income to
the trustees of the Lowville Academy, to be by them expended, etc.,
and it was held that there was ' an attempt made to create a per-
petual trust in favor of the Lowville Academy,' which could not be
sustained under the acts of 1840 and 1841.  ' These acts,' it was
said, ' give to the corporation described therein capacity to take
property granted or devised to them in trust for the purposes
therein specified; but do not authorize the creation of any trust of

which such corporations shall be the beneficiaries, while others are the trustees, not warranted by the existing law, or give any validity to any such trust. To render these statutes applicable, the property must be given to the corporation upon some trust thereby authorized.' (*Holmes* v. *Mead* [52 N. Y. 332, 339].)"

The gift in *Matter of Griffin* was ultimately saved by the application of the *cy pres* doctrine. Certainly if the holding of the Court of Appeals in the *Griffin* case applied against a charitable corporation, the law, with greater force and reason, should prohibit the creation of a trust even for the permitted period of suspension, for a business corporation not specifically authorized by statute to be a *cestui*.

*Matter of Griffin* appears to have been followed in *Matter of Frasch* (245 N. Y. 174, 183), where Judge LEHMAN, considering this question, said: " If the trustee may under the will choose a business corporation as one of the ' incorporated institutions ' to which the income of the trust fund may be paid, and if further such business corporation may use that income for research to advance its own business interests, then undoubtedly the trust created is not valid (citing *Matter of Shattuck*, 193 N. Y. 446)." Of course, a simple trust with separate trustees and a direction to pay income to a true charitable corporation is valid either for the lawful period of suspension or in perpetuity under the Tilden Act. (*Allen* v. *Stevens*, 161 N. Y. 122; Pers. Prop. Law, § 12.) A search of the reported cases in this State fails to reveal, so far as ascertainable, any decision supporting the validity of a trust for the benefit of a strictly business corporation. Certain text-writers appear to indicate that without express statutory authority to create such a trust, or express statutory capacity on the part of the corporation to take as a beneficiary, such a trust would be void. Other text-writers state that a corporation may be a beneficiary but either furnish no authorities to sustain their view or else cite cases involving charitable corporations. (Chaplin Express Trusts & Powers, § 363, p. 249; Perry Trusts & Trustees [7th ed.], vol. I, §§ 60–64; Lewin Trusts [13th ed.], p. 38; Page Wills [2d ed.], § 1051 and §§ 220, 221; Thompson Construction of Wills, § 565.)

The Real Property Law, and particularly section 96, seems to indicate that both the measuring lives of a trust (*Matter of Howells*, 145 Misc. 557) and the beneficiaries must be human beings. It would seem, therefore, that under the decisions and statutes of the State, a business corporation may not be the beneficiary of a trust even where the trust period does not exceed the statutory period of limitation. Under this conclusion the trust is wholly void.

If, however, the corporation had the capacity to take as bene-

ficiary, can the trust be saved in part? It is argued that the primary provision which fixes its possible duration for the lives of the two sons of the testator should be preserved and the executors permitted to apply the income or part of the principal during that period. The courts, in their discretion, have at times resorted to the principle of judicial surgery. They have severed the invalid portions of a will and saved the valid. (*Matter of Trevor*, 239 N. Y. 6.) That policy is directed to the accomplishment of the intention of the testator and the effectuation of the plan of distribution so far as legally possible. Equality of division among the natural objects of the testator's bounty typifies the motive for the application of the rule. In the pending estate there is no appealing reason to salvage any part of the trust for the benefit of a business corporation. Due to the depreciation of the assets of the estate, the general legacies to the widow and children have been greatly diminished. A determination that the trust is void in its entirety will help make up the present deficit in the legacies for the benefit of these nearer relatives. The testator, himself, indicates in his language a doubt as to the validity of his plan and apparently to avoid illegality vested his executors with the power to terminate the trust and to turn the balance of it into the residuary trust created for the benefit of his widow, his children and his issue. Where the maker of the will indicates so strongly his own belief in its unlawfulness, the court should not be asked to strain to support it.

In the scheme of the trust, validity and invalidity are closely interwoven. The fund cannot escape from suspension for the possible unlawful period of three lives. Thus invalidity dominates and vitiates the scheme in its entirety. Unlawful accumulations of income are authorized by this will and, while they may be excised in the ordinary case, they constitute an essential addition here to the other illegalities in the trust plan. The remainder of the trust upon the death of the widow is contingent. Vesting, with respect to this fund, therefore, following through three lives, occurs at an illegal date — the death of the third life tenant. The remainder, therefore, cannot be accelerated.

I accordingly hold that no part of the trust can be saved, but that it is void in its entirety. (*Matter of Horner*, 237 N. Y. 489; *Matter of Perkins*, 245 id. 478; *Matter of Durand*, 250 id. 45; *Wright v. Wright*, 225 id. 329; *Matter of Title Guaranty & Trust Co.* [*Estate of Baxter*], 195 id. 339.) I likewise hold that the disputed gift is not valid as a power in trust. The power is as unlawful as the trust itself and must fail for the same reasons. (*Murray v. Miller*, 178 N. Y. 316, 323; *Matter of Hitchcock*, 222 id. 57, 71; *Matter of*

*Manning*, 133 Misc. 695, 701; affd., 227 App. Div. 644; affd., 252 N. Y. 540; Chaplin Express Trust & Powers, p. 441.) From the apparent condition of the estate there will be a deficit in the general legacies. It would appear, therefore, that the amount of the fund which would have been applied to the trust in question here, must be used to make up the deficit in the general legacies. If there be a surplus over the full amount of the general legacies, it passes to the next of kin who take by intestacy.

(2) I hold that the real estate owned by the testator is not charged with the payment of the general legacies. (*Matter of Mould*, 117 Misc. 1; affd., 204 App. Div. 889; affd., 236 N. Y. 582.)

(3) I hold that in devising his country home, known as " Wawapek Farm," to his eldest child surviving his widow, the testator intended to include " Wawapek Farm " proper. In the devise, he did not comprehend the gift of the outlying tracts situated in the general neighborhood but not adjoining the main property. This property, which was specifically devised, is not subject to the general power of sale granted to the executors.

Submit decree on notice construing the will and settling the account accordingly.