#24127, #24142-rev & rem in pt & aff in pt-DG

**2008 SD 4**

IN THE SUPREME COURT

OF THE

STATE OF SOUTH DAKOTA

\* \* \* \*

In the Matter of the Estate of
GLENN E. OLSON,
Deceased.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF

THE FIRST JUDICIAL CIRCUIT

CLAY COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE ARTHUR L. RUSCH
Judge

\* \* \* \*

THOMAS E. ALBERTS                    Attorney for appellant
Avon, South Dakota                   James W. Olson.


CRAIG K. THOMPSON                    Attorney for appellee
Vermillion, South Dakota             Wayne A. Olson, Personal Rep./
                                     Estate.

\* \* \* \*

ARGUED ON JANUARY 10, 2007
REASSIGNED JUNE 4, 2007

OPINION FILED **01/09/08**

#24127, #24142

GILBERTSON, Chief Justice (on reassignment).

[¶1.] Wayne Olson, in his capacity as the personal representative of Glenn Olson's estate, sold real property that had been specifically devised to James Olson and other devisees as tenants in common. Personal property passing under the residuary clause was also sold at public auction. The trial court confirmed the sales but sanctioned the personal representative $1,000 for failing to give James advance notice of the public auctions. We reverse and remand in part and affirm in part.

## FACTS AND PROCEDURAL HISTORY

[¶2.] Glenn Olson died testate on August 3, 2002. At the time of his death, he owned approximately 132 acres of farmland, including a homestead. This realty and home, which was built in 1900, had been in the Olson family for generations. Although apparently a modest homestead by current standards, Glenn had spent his entire life living in it while farming the adjoining land. His sister also lived in the homestead and took care of housekeeping chores. Wanting to keep this farm in the family he wrote a will where he specifically devised this real estate to James and six other nieces and nephews (collectively heirs). Glenn's personal property was devised to the same heirs through the residuary clause.

[¶3.] Probate of Glenn's will is subject to South Dakota's Uniform Probate Code (UPC) as it was drafted subsequent to South Dakota's implementation of the UPC in 1995. Therefore, his estate was informally probated in accordance with the UPC.[1] Wayne was appointed personal representative in September 2002.

---

1. James did not exercise his right to require that the estate be formally administered.

-1-

Following his appointment, Wayne determined that the buildings on the homestead were in such poor condition that they constituted a drain on the estate. Consequently, without the notice to the heirs as required by SDCL 29A-3-715(b), he sold the specifically devised real property at a public auction. The personal property was sold separately, also without the same requisite notice to the heirs. The trial court found as a finding of fact, "[t]he only notice of the sale given by the personal representative was 1 or 2 years earlier when he wrote the other heirs indicating that he was considering whether it should be sold." It entered a conclusion of law that "Wayne Olson's notices were inadequate." At oral argument Wayne conceded that the sales did not comply with SDCL 29A-3-715(b).

[¶4.]        James had filed a demand for notice pertaining to the estate under SDCL 29A-3-204, which requires that any "order or filing" pertaining to the estate not be "made or accepted" without providing notice to James. According to Wayne, he conducted the public auction of the real and personal property under SDCL 29A-3-711, which provides that personal representatives may exercise their powers "without notice, hearing, or order of court."

[¶5.]        James ultimately did receive legal notice of the completed sales through the filing of the summary of these public sales. He also received notice of the motion to confirm the sales. James appeared and objected to the confirmation of both sales. Following a hearing on the motion, the trial court confirmed the sales, finding that the land was a drain on the estate, the sales were conducted in a reasonable manner, and the land brought an exceptional price exceeding market

value. Ultimately, the trial court concluded that "[t]he evidence is abundant that the sale [of real property] was conducted for a good reason."

[¶6.]    James did not object to the court's finding that there was good reason to sell the property. Instead, James argued that Wayne did not have the power to sell specifically devised property. James also claimed that he was entitled to advance notice of the public auctions under SDCL 29A-3-204 and SDCL 29A-3-715(b). The trial court ultimately concluded that Wayne possessed a power of sale under the UPC. Although the court also found that Wayne did not give advance notice of the public auctions as required by SDCL 29A-3-715(b), it concluded that James had not been damaged by the lack of notice. Therefore, the sales were not voided on this basis. Instead, the court sanctioned Wayne $1,000 for failing to give advance notice.

[¶7.]    We have restated the parties' issues[2] on appeal as follows:

---

2.    James also raised a "partition" issue using the following language: "Was the personal representative entitled to partition real estate which is the subject of a specific bequest in the decedent's will without complying with SDCL 29A-3-911[referring to notice]." SDCL 29A-3-911 does not contain procedural notice requirements other than noting that a partition may be allowed "[a]fter notice to the interested heirs or devisees." *Id*. Furthermore, SDCL 29A-3-911 only applies when "the personal representative or one or more of the heirs or devisees [petitions] the court prior to the formal or informal closing of the estate, to make partition." *Id*. Here, there was no petition to partition under SDCL 29A-3-911. This was a sale dispute only involving a motion to confirm the sale of land under SDCL 29A-3-704. As the trial court explicitly found, Wayne "invoked the power of the court under SDCL 29A-3-704 to request court approval of the sales." Because this was not a civil partition action under SDCL 29A-3-911 or SDCL ch 21-45 (governing the general civil remedy of partition), but was a confirmation of sale proceeding under SDCL 29A-3-704, we decline to address James' notice issue under SDCL 29A-3-911 or SDCL ch 21-45. We only address the notice issue under the other statutes that were considered below.

1. Whether the personal representative possessed the power to sell specifically devised land when the power of sale was not contained in the will and the sale was not necessary to pay estate debts.

2. Whether the sale of personal property was void under SDCL 29A-3-204 and SDCL 29A-3-715(b) for failure to give advance notice of the public auction, and if not void, was the remedy of damages proven.

By notice of review, Wayne raises the following issue:

3. Whether the trial court erred in assessing a sanction against the personal representative for failure to give advance notice of the sales.

## STANDARD OF REVIEW

[¶8.]    This Court's standard of review is well settled:

This Court reviews a trial court's findings of fact under the 'clearly erroneous' standard and overturns a trial court's conclusions of law only when the trial court erred as a matter of law.  Century 21 Associated Realty v. Hoffman, 503 NW2d 861, 864 (SD 1993) (citations omitted). . . .  Questions of law are reviewed de novo.  City of Colton v. Schwebach, 1997 SD 4, ¶8, 557 NW2d 769, 771.  "This Court interprets statutes under a de novo standard of review without deference to the decision of the trial court." *In re* Estate of Jetter, 1997 SD 125, ¶10, 570 NW2d 26, 28.

Matter of Estate of O'Keefe, 1998 SD 92, ¶7, 583 NW2d 138, 139.

## ANALYSIS AND DECISION

[¶9.]    **1.    Whether the personal representative possessed the power to sell specifically devised land when the power of sale was not contained in the will and the sale was not necessary to pay estate debts.**

[¶10.]    James first argues that Wayne was without power to sell specifically

devised land because there was no power of sale provision in the will and the sale of

specifically devised property was inconsistent with the specific devisees' right to

receive property in kind. We agree.

[¶11.] In 1877, our first Territorial Probate Code was passed which contained

a relevant statute which was to remain in effect until the enactment of the Uniform

Probate Code over a century later.

> When property is directed by the will to be sold, or authority is
> given in the will to sell property, the executor may sell any
> property of the estate without the order of the probate court, and
> at either public or private sale, and with or without notice, as
> the executor may determine[.]

Section 194 Probate Code, Revised Codes 1877, *re-codified as* SDCL 30-22-1,

*repealed by* 1995 SD Laws ch 167, § 168. In the case of *In re Estate of Kappenmann*,

82 SD 91, 141 NW2d 780 (1966), this Court upheld a sale of real estate by an

executor solely because such authority had been granted in the decedent's will thus

invoking the authority of the above-cited statute. In so doing, the Court noted that

the sole other grant of authority for the sale of a decedent's real property during

probate was limited to situations where:

> it appears to be necessary or that it would be for the advantage,
> benefit and best interests of the estate *and those interested
> therein* or for the purpose of paying a debt secured by a
> mortgage or lien on such property[.]

*Id.* at 782 (emphasis added) (quoting SDL 1960 Supp. 35.1501, *re-codified as* SDCL

30-22-6, *repealed by* 1995 SD Laws ch 167, § 168). A review of the two statutes

cited in *Kappenmann* establishes that prior to the enactment of the UPC, a sale of

real estate by an executor could be legally accomplished by: (1) a grant contained in

the will; or (2) for settlement of claims and debts; or (3) where it is in the best

interests of the estate and the heirs. It appears that this was the general rule in

many other jurisdictions. Hanson v. Hanson, 127 NW 1032, 1033 (Iowa 1910), 31 AmJur2d *Executors and Administrators* § 731, 34 CJS *Executors and Administrators* § 295.

[¶12.]     As is uncontested herein, there is no such power of sale granted to Wayne by the decedent's will to validate the sale. Thus, the issue now before us calls upon us to engage in statutory interpretation to determine if the passage of the Uniform Probate Code by the South Dakota Legislature in 1995 made a change so significant in a century old doctrine as to essentially reverse it.

[¶13.]     Some historical background of the UPC particular to South Dakota is of analytical assistance to guide us in the issue now before us: "[a]s an overall view, we would note that the UPC does not appear to be a revolutionary departure from past probate procedure." Matter of Estate of Jetter, 1997 SD 125, ¶16, 570 NW2d 26, 29. Therein, we cited to SDCL 29A-1-103 which provides that: "[u]nless displaced by the *particular provisions* of this code, the principles of law and equity supplement its provisions." (Emphasis added).

> Although no legislative history exists concerning the adoption of the UPC, the State Bar of South Dakota published educational materials in June of 1994 on the enactment of the UPC in this jurisdiction. Co-chairman of the Probate Form Committee of the State Bar, Professor David English, wrote that this Committee created the UPC work product which was adopted by the Legislature. Committee member Richard Kolker wrote that "South Dakota's adoption of a new probate code will not change the basic principles under which property is transferred from the decedent to the decedent's heirs." While this opinion is not binding on us any more than other commentary concerning the UPC, it is persuasive authority that contradicts the position argued by [the Estate.]

*Jetter,* 1997 SD 125, ¶16 n5, 570 NW2d at 29-30 n5.

[¶14.]     According to legislative rules of construction applicable exclusively to wills, "[a] specific devisee has a right to the specifically devised property in the testator's estate at death." SDCL 29A-2-606(a).[3]  Also, "[u]nless a contrary intention is indicated by the will, the distributable assets of a decedent's estate shall be distributed in kind *to the extent possible* through application of the following provisions:  (1) A specific devisee is entitled to distribution of the thing devised." SDCL 29A-3-906(a)(1) (emphasis added).  "This section establishes a preference for distribution in kind [as] [i]t directs a personal representative to make distribution in kind whenever feasible." UNIF. PROBATE CODE § 3-906 cmt (amended 1987).

[¶15.]     Furthermore, "[u]pon the death of a person, that person's real and personal property devolves to the persons to whom it is devised by will." SDCL 29A-3-101.  This statute makes it clear that Glenn's real property vested in James and the other six nieces and nephews at the time of Glenn's death, subject only to the probate of the estate. *See In re* Estate of Roehr, 2001 SD 85, ¶6, 631 NW2d 600, 602.

---

3.    The dissent's analysis that "SDCL 29A-2-606 does not apply because that statute deals with the issue of ademption" is simply incorrect.  This claim is flatly contradicted by the opening provision of that chapter, SDCL 29A-2-601 which declares, "[i]n the absence of a finding of a contrary intention, the rules of construction in this part control the construction of a will."  Moreover, the title of chapter 29A-2 is "Rules of Construction Applicable Only to Wills." This also fails to consider the unrestricted language of SDCL 29A-1-102 which declares that "[t]his code shall be liberally construed and applied to promote simplification, clarification, and efficiency in the law of decedent's estates."

[¶16.]     Unlike pre-UPC law requiring that a power of sale be in the will, personal representatives now possess a statutory power of sale *unless* a contrary provision is contained in the will. SDCL 29A-3-715(a) provides in relevant part:

> *Except as restricted or otherwise provided by the will* or by an order in a formal proceeding and subject to the priorities stated in § 29A-3-902,[4] a personal representative, acting reasonably for the benefit of the estate, may properly: . . .
>
> (6) Acquire or dispose of an asset, including land . . .
>
> (23) Sell, mortgage, or lease any real or personal property of the estate or any interest therein . . . .

(Emphasis added).

[¶17.]     Although SDCL 29A-3-715(a)(23) allows the personal representative to sell any real or personal property of the estate as long as he or she is acting reasonably for the benefit of the estate, there is an important exception to this statutory power of sale. This power in a fact setting such as this cannot be exercised if it is restricted or otherwise provided for by the will as the other statutory authorizations for sale are not applicable. *Id.* Here, the will restricts the power of sale through a specific devise of real property. The act of specifically devising the real property exhibits the testator's clear intent that the land not be sold. This is also reinforced by the fact that there was no power of sale provision in the will. Were we to hold to the contrary, in fact situations such as this, it would essentially nullify the provisions of SDCL 29A-2-606(a) and 29A-3-906(a)(1).

---

4.     SDCL 29A-3-902 provides for the order of abatement and clarifies that specifically devised property is to abate last. Subjection of the statutory power of sale to this priority statute also enforces the preference against the sale of specifically devised property.

[¶18.]     A Pennsylvania court interpreting a similar statutory power of sale conferred upon a personal representative concluded that "no such power of sale exists as to real property specifically devised."  Brown v. Bailey, 2 FiducRep 342, 84 Pa D&C 269, 274, 1953 WL 4538, at *3 (PaComPl 1952).  The statute in *Brown* provided that the "power of sale has no application where it is 'otherwise provided by the will.'"  *Id*. (citation omitted).  Furthermore, other courts have held that "a general power authorizing the sale or rental of any property which the testator possessed at the time of death applies only to property *not specifically devised*."  *In re* Estate of Radjenovich, 1991 WL 70304, at *1 (MinnCtApp 1991) (unpublished) (emphasis added) (citing 1 R.STEIN, STEIN ON PROBATE, § 10.01b(3) (2d ed 1990)); 1 R.STEIN, STEIN ON PROBATE, § 10.01b(3) (2d ed 1990) ("Minnesota Statutes section 524.3—715 states, in effect, that the personal representative has power to sell 'except as restricted or otherwise provided by the will.'  A specific devise should be considered such a restriction").  *See also In re* De Forest's Estate, 147 Misc 82, 88, 263 NYS 135, 142 (NYSur 1933) (property specifically devised is not subject to general power of sale granted to executors); Wilkinson v. Chambers, 181 Pa 437, 442, 37 A 569, 569 (Pa 1897); *In re* Estate of Gamble, 183 So2d 849, 852 (FlaDistCtApp 1966); *In re* Chaney's Estate, 120 Tex 185, 189, 36 SW2d 709, 711 (TexComm'nApp 1931).

[¶19.]     In *Radjenovich*, the Minnesota Court of Appeals held the trial court properly found that the general powers given to the personal representative related only to property not specifically devised.  *Radjenovich,* 1991 WL 70304, at *1 (citing *In re* Scott's Will, 88 Minn 386, 388, 93 NW 109, 110 (Minn 1903)).  Thus, the

personal representative was not entitled to sell lakeshore property specifically

devised to the testator's sons. *Id*. Likewise, in addressing a similar situation, the

Pennsylvania Supreme Court reasoned:

> The authority given to the executor in item 3 cannot be
> construed as extending to and including lands specifically
> devised in items 2 and 5. A construction of it which would
> enable the executor to defeat specific devises of real estate
> cannot be sanctioned. The reasonable and proper construction
> of it is that which limits it to property not specifically devised by
> the will. This construction obviously accords with the intention
> of the testator in conferring the power to sell or lease.

*Wilkinson*, 181 Pa at 442, 37 A at 569.

[¶20.] Wayne claims the will did not restrict or conflict with the statutory

power of sale. However, the will provided for the specific devise of the real property

and did not otherwise provide for a power of sale. This inherently conflicts with the

statutory power of sale, for it is an indication of the testator's intent that the real

property not be sold. Instead, Glenn Olson intended to give his land to the specific

devisees.

[¶21.] The authority Wayne relies upon for approving the sale of this

specifically devised property is also readily distinguishable. Most of the cases are

pre-UPC and the wills in those cases expressly granted the personal representative

a power of sale. For instance, in *In re Kappenmann's Estate*, the will provided: "I

authorize and empower my personal representative . . . if and whenever in the

settlement of my estate he shall deem it advisable, to sell . . . the whole or any part

of my real and personal estate." 82 SD at 93-94, 141 NW2d at 781. Thus, there was

no restriction on the power to sell; instead, there was an express grant of a power to

sell. The *Kappenmann* Court even specified that there was no bar to the sale of

specifically devised real property when it was made under a power of sale *contained in the will,* because the express authority was contained in the testator's will. 82 SD at 97, 141 NW2d at 783 (citing Champlin v. Powers, 80 RI 30, 90 A2d 787, 33 ALR2d 1176)).[5]

[¶22.]     Thus, in the cases relied upon, including *Kappenmann*, the will established the power of sale, not a statute. Although the trial court concluded there was no difference between a power of sale granted by the will and a power of sale granted by statute, it is relevant to the testator's intent. And, "the intention of the testator, as taken from the will as a whole, controls the exercise of powers granted to the personal representative." *Radjenovich*, 1991 WL 70304, at *1 (citing Lovejoy v. McDonald, 59 Minn 393, 401, 61 NW 320, 321 (Minn1894)).

[¶23.]     Other courts have also recognized the distinction between a testator granting the power of sale as opposed to a statute: "Absent a grant of a power of sale *by the testator*, or specific instructions by the testator that the devise be sold before distributed, specific devises *must* be distributed in kind." *In re* Estate of Polly, 511 So2d 755, 756 (FlaDistCtApp 1987) (citing *generally In re* Estate of

---

5.     In the pre-UPC case, *Hutkoff v. Winmar Realty Co., Inc.*, 211 AD 726, 730, 208 NYS 25 (NYAppDiv 1925), there was a "general and unrestricted" power of sale contained in the will. The same is true of the will in *Weinstein v. Hunter*, where a New York court held: "Looking at the will as a whole, the intention of the testator can hardly be mistaken. That intention . . . was to give to his children all of his real estate, subject however to the power of sale in his executors. The right of the testator *to so provide in his will* is not questioned." 276 AD 471, 476, 96 NYS2d 1 (NYAppDiv 1950) (emphasis added). A power of sale was also granted by the will in *Davis v. Scavone*, 149 Me 189, 191-92, 100 A2d 425, 426 (Me 1953); *Stofer v. Stiltz*, 179 Ky 399, 200 SW 631, 632 (Ky 1918); *Mellen v. Mellen*, 34 NE 925, 928 (NY 1893); and *Basler v. Delassus*, 690 SW2d 791, 796 (Mo 1985).

Smith, 200 So2d 547 (FlaDistCtApp 1967)); *Gamble*, 183 So2d 849 (additional citation omitted)) (emphasis added). In *Polly*, "[t]he will contained a general power of sale only as to the residual estate—not to the specific devises." 511 So2d at 756. Thus, the *Polly* court ordered the specific devises be distributed in kind instead of sold. *Id.*

[¶24.]      Another court acknowledged that if the specific devisees "had elected to take the land as land, free from the power of sale, prior to the . . . sale by the executor under the power, . . . an action would lie in behalf of the parties interested, to enjoin the executor from selling under the power." *Mellen*, 34 NE at 928. The *Mellen* court recognized that "[a] sale under such circumstances would at least create a cloud on the title, and an action to enjoin the sale would be an available and proper remedy." *Id.* (citing Butler v. Johnson, 18 NE 643 (NY 1888)).

[¶25.]      Wayne would require testators to draft their wills to limit, restrict, or eliminate the general power of sale provided by statute in order to more clearly express their testamentary intent. He submits that had Glenn wished to exempt the specific devise from Wayne's statutory power of sale, Glenn must have done so in his will. We conclude that Glenn has done just that. By providing for the specific devise of the property, he stated his testamentary intent to restrict its sale.

[¶26.]      Although Wayne claims that he possessed an unrestricted general power of sale, this is not the case. Wayne possessed a statutory power of sale that was subject to restrictions in the will. The will provided for the specific devise of the real property, which inherently prohibits a sale or at least indicates the intent to restrict its sale. In such a case, we should uphold the testator's intent. If we were

-12-

to adopt Wayne's position, a personal representative could sell a family heirloom that was specifically devised to a family member as long as he or she was "acting reasonably for the benefit of the estate." A probate administration is not an eminent domain proceeding where an heir's bequest is involuntarily taken from him or her and they receive "just compensation" in return. Being presented by the personal representative with a bank draft may be a sorry alternative to the promise in a will that land which had been in the family for generations would vest in the decedent's heirs.

[¶27.] The facts of this case strikingly point out what the statutes protect. The homestead at issue was built in 1900 and initially owned by Stephord and Belva Olson, Glenn's parents, prior to Glenn becoming the fee owner. Although Glenn's homestead was humble by current standards or "dilapidated" as described by the Estate's appraiser, it was the only place where Glenn ever lived. He lived his entire life there and farmed the adjoining land. It was his life. It also provided a home for his sister. His nieces and nephews, who he designated in his will as his heirs, visited him there. While the appraiser indicated such homesteads could be bought and sold without difficulty, that fact ignores the family's historical and sentimental attachment to this land which transcends monetary valuation. It was not just Glenn's investment to be sold when the opportunity for profit presented itself, it was his home. A review of the above statutes makes it clear that the Legislature has intended that protections should be, and are in place in South Dakota to protect a testator's intent.

[¶28.]		The sale should have been voided as the personal representative did not have authority to sell the specifically devised property unless it was necessary to satisfy the debts of the estate or for other valid purposes authorized by the UPC such as where the heirs agree it is for their best interests as well as that of the estate.  Wayne identifies no basis which is so meritorious as to override the contents of Glenn's will.  Thus, today we honor Glenn's intent as set forth in his will.

> [The decedent] wanted certain land to go to certain people.  No two pieces of land are alike.  Individual parcels of real property are considered to be so unique that when an action is brought for breach of a contract for sale of land, specific performance may be ordered.

*In re* Estate of Siebrasse, 2002 SD 118, ¶9, 652 NW2d 384, 386.

[¶29.]		In analyzing the purpose of the UPC we concluded that "[p]eople do not go to a lawyer to have a will drawn with the idea that their estate will pass under the intestate succession laws.  That is the whole purpose of a will, to avoid the State's estate plan by creating your own."  *Jetter,* 1997 SD 125, ¶28, 570 NW2d at 32.  We reverse the trial court order confirming the sale of specifically devised real estate and remand for further proceedings consistent with this opinion.  Upon remand, this will allow the third party purchaser the opportunity to intervene to protect his or her interests.

[¶30.]		**2.	Whether the sale of personal property was void under SDCL 29A-3-204 and SDCL 29A-3-715(b) for failure to give advance notice of the public auction, and if not void, was the remedy of damages proven.**[6]

---

6.	James also asserts that the sale of real property was void for failure to give advance notice.  However, since we have already held that the sale of real property was void because the personal representative lacked the power to

(continued . . .)

[¶31.] James argues that Wayne's failure to give advance notice of the public auction voided the personal property sale under SDCL 29A-3-204 and SDCL 29A-3-715(b). We conclude the sale was not void under SDCL 29A-3-204 or SDCL 29A-3-715(b).

[¶32.] SDCL 29A-3-204 provides:

> Any interested person desiring notice of *any order or filing pertaining to a decedent's estate* may file a demand for notice with the court at any time after the death of the decedent stating the name of the decedent, the nature of the demandant's interest in the estate, and the demandant's address or that of the demandant's attorney. The demandant shall mail a copy of the demand to the personal representative if one has been appointed. After filing of a demand, no *order or filing* to which the demand relates shall be *made or accepted* without notice as prescribed in § 29A-1-401 to the demandant or the demandant's attorney. The validity of an order which is issued or filing which is accepted without compliance with this requirement shall not be affected by the error, but the petitioner receiving the order or the person making the filing may be liable for any damage caused by the absence of notice. The requirement of notice arising from a demand under this provision may be waived in writing by the demandant and shall cease upon the termination of the demandant's interest in the estate.

(Emphasis added). Because James filed a demand for notice under this statute, he was entitled to advance notice in compliance with SDCL 29A-3-715(b) of the personal property sale. The language "any order or filing pertaining to a decedent's estate" impliedly includes any notice of sale. SDCL 29A-3-204. Thus, a proposed sale of devised personal property warrants this required notice.

_____

(. . . continued)
   sell the specifically devised real estate, we need only address whether the sale of personal property was void for lack of advance notice.

[¶33.] In addition, SDCL 29A-3-715(b) also required advance notice of the public auction of personal property. SDCL 29A-3-715(b) provides in relevant part:

> Not less than fourteen days prior to the closing of any sale of real or personal property of the estate for which the fair market value is not readily ascertainable, the personal representative shall provide written information of the intent to sell to the persons who have filed a demand for notice under § 29A-3-204.

The parties do not dispute that the fair market value of the personal property was not readily ascertainable. Moreover, the "closing" of the sale of personal property would take place at the time of the public auction after the purchaser bids and submits payment for the property. Therefore, James was entitled to written notice not less than fourteen days prior to the personal property public auction. This comports with the concept that those devisees who are potentially entitled to the personal property, even under a residuary clause, should receive notice of a sale of property devised to them. This required notice would allow the devisee to either obtain the property prior to the sale or bid on the property at the sale.

[¶34.] However, the failure to give notice does not, under the express language of the statutes, void the sale. SDCL 29A-3-204 specifically provides that failing to give notice does not vitiate the confirmation of sale. Rather, the remedy for failure to give notice was limited to damages.

> The validity of an order which is issued or filing which is accepted without compliance with this [notice] requirement shall not be affected by the error, but the petitioner receiving the order or the person making the filing may be liable for any damage caused by the absence of notice.

*Id.* Thus, "[i]f the exercise of power concerning the estate is improper, the personal representative is liable to interested persons for damage or loss resulting from

breach of fiduciary duty." SDCL 29A-3-712. *See also* Green v. Gustafson, 482 NW2d 842, 846 n3 (ND 1992) ("If a personal representative improperly disposes of property of the estate, the remedy of the devisee or heir is directly against the personal representative"). James recognized as much at oral argument where he sought return of the realty yet conceded it was not possible to recover the "rakes, wash-tubs, hoe-handles" and other items which were dispersed by the sale of Glenn's personal property. He conceded in regards to the personal property, his remedy was a suit for damages against the personal representative. This is the same result as if the personal property had been destroyed by fire through the negligence of the personal representative by failing to protect it. Obviously it is gone and the only remedy is damages. However, as to the real property and buildings, they are still in existence and at the same location. James' remedy was an award of damages against "the petitioner receiving the order or the person making the filing." SDCL 29A-3-204.

[¶35.]     Despite the theoretical problems decried by the dissent, in actual application of the UPC statutes, no problems should be encountered, let alone create an "impossible situation for practioners" if the statutes are properly followed. As noted above, for an heir to have standing to challenge the proposed sale, he or she must serve a demand notice upon the personal representative per SDCL 29A-3-715(b). In such instances as here, where an heir files such a notice, 29A-3-715(b) requires notice be given to the heirs prior to any sale. If there are no objections filed by the heirs with standing to object or anyone else with such standing, the sale continues no differently than it would have under our previous probate code.

Should an heir enter a timely objection, the trial court will determine it and if it is without merit the sale then proceeds. If the objection by the heir has merit, the sale will not proceed and presumably the property will be distributed to the heirs in accordance with the testator's wishes as expressed in the will.

[¶36.]    Here, James argues that he was damaged because he was not given advance notice of the sale and was therefore unable to "protect" his property. However, he asserts no monetary claim, and the trial court concluded that "James Olson did not suffer any losses due to Mr. Wayne Olson's failure to comply with [SDCL] 29A-3-715(b)." Because there is no clear error in the court's finding that James failed to prove damages, we affirm the confirmation of the sale of personal property.

[¶37.]    **3.    Whether the trial court erred in assessing a sanction against the personal representative for failure to give advance notice of the sales.**

[¶38.]    By notice of review, Wayne challenges the trial court's imposition of a sanction for failure to give notice of the public auctions. The court, in its bench decision, recognized that a penalty or sanction was not authorized:

> [29A-3-715(b)] doesn't provide a penalty for violation; and that troubles the court, that there should be a penalty for violating that statute. And the statute doesn't prescribe a penalty, but otherwise, if there's no penalty for violating that, you know, the court's efforts to get people to comply with the statutes are empty. Consequently, the court feels that it needs to craft some kind of a penalty for the failure to comply with that section, and the court's determination is that it would be appropriate at this – in this instance to sanction Mr. Wayne Olson . . . $1,000.

We agree that 29A-3-715(b) does not authorize a sanction or penalty for a notice violation. Because the plain language of the statute does not authorize a penalty or sanction, we may not add that language to the statute.

-18-

> While it is fundamental that we must strive to ascertain the real intention of the lawmakers, it is equally fundamental that we must confine ourselves to the intention as expressed in the language used. To violate the rule against supplying omitted language would be to add voluntarily unlimited hazard to the already inexact and uncertain business of searching for legislative intent.

Petition of Famous Brands, Inc., 347 NW2d 882, 885 (SD 1984) (citations omitted). Therefore, the trial court erred in awarding sanctions because they were not authorized under the statute. We therefore reverse the award of sanctions.

[¶39.]      Wayne, as the personal representative, has moved for attorney's fees in the amount of $5,080.05 under SDCL 15-26A-87.3 and SDCL 29A-3-720. We deny the motion.

[¶40.]      Reversed and remanded in part and affirmed in part.

[¶41.]      SABERS and MEIERHENRY, Justices, concur.

[¶42.]      KONENKAMP and ZINTER, Justices, dissent.


ZINTER, Justice (dissenting).

[¶43.]      Glenn's will, as well as the probate, was governed by the Uniform Probate Code, and the UPC provides a statutory power of sale that was unknown to our pre-existing statutes and the common law. Had Glenn wanted to limit, restrict, or eliminate that power of sale, the UPC requires that Glenn had to provide that limitation in his will. SDCL 29A-3-715(a) (Unif. Probate Code § 3-715 (amended 1997)), 8 ULA 169. Although Glenn failed to do so, today the Court declares that a specific devise of real property is "inconsistent" and in "inherent conflict" with the statutory power of sale and a specific devisee's right to receive property in kind.

-19-

*Supra* ¶¶10, 20. From this, the Court holds as a matter of law that a specific devise creates an implied limitation, and therefore a personal representative has no authority to sell specifically devised property under the statutory power of sale in SDCL 29A-3-715(a)(23), even if it is in best interests of the estate. According to the Court, the only exception is: when the power to sell is expressed in the will and the sale is necessary to pay debts of the estate or "where the heirs agree it is for their best interests as well as that of the estate." *Supra* ¶28. To support this unprecedented result, the Court adopts the remarkable propositions of law that: (1) "no such power of sale exists as to real property specifically devised"; (2) a "general power authorizing the sale or rental of any property which the testator possessed at the time of death applies only to property not specifically devised"; and (3) "property specifically devised is not subject to [the] general power of sale granted to executors." *Supra* ¶18.

[¶44.]     This decision not only fails to follow the Legislature's directives in the UPC, it adds new language by amending SDCL 29A-3-715(a)(23) to abrogate the statutory power of sale over specifically devised property unless the power is expressed in the will and the sale is necessary to pay estate debts or all of the heirs agree to the sale. The Court's decision also fails to follow our controlling decision in *In re Kappenmann's Estate,* 82 SD 91, 141 NW2d 780 (1966), and over 100 years of settled law establishing that there is no inherent inconsistency between a power of sale and a specific devise. Ultimately, the Court's decision fails to recognize that a power of sale (either statutory or expressed) may be exercised with respect to specifically devised real and personal property for countless reasons other than to

pay debts or where the heirs agree, as long as the sale benefits the estate. SDCL 29A-3-715(a)(23). The Court's contrary pronouncements, based upon unsupported intermediate court dicta,[7] will profoundly impact practitioners as well as testators who devised real property in their wills. The decision will also affect practitioners and heirs who desire to conduct personal property sales.[8] For these reasons, I respectfully dissent.

---

7. The strength of the Court's authorities is typified by its reliance on the New York trial court case of In re *De Forest's Estate,* 147 Misc 82, 88, 263 NYS 135, 142 (NYSur 1933). The Court does not acknowledge that it adopts trial court dictum that is contrary to all New York appellate cases on this subject. *See infra* ¶66.

8. Both the real and personal property were specifically devised and subsequently sold by Wayne's estate pursuant to SDCL 29A-3-715(a)(23). On appeal, James challenges the personal property sale for the same reasons that he challenges the real property sale. Although the Court voids the real property sale, it fails to explain, under its legal analysis of the power granted under the UPC, why the sale of the specifically devised *personal* property was also not void. If the real property sale was void because the personal representative had no authority to sell specifically devised real property under SDCL 29A-3-715(a)(23), the same result must follow for the specifically devised personal property: SDCL 29A-3-715(a)(23) unequivocally applies to both real and personal property. Consequently, if the Court's legal analysis were correct, the sale of the specifically devised personal property (sold at auction) was also unauthorized and void.

    Although the Court does not address this personal property issue, practitioners will not have that option. As a result of this decision, practitioners will be required to rethink whether future personal property sales may be conducted. Under today's decision, even if advance notice of a personal property sale is given, no power to sell specifically devised personal property will exist under the statutory power of sale unless there are specific directions in the will and the sale is necessary to pay estate debts or all heirs agree to the sale of each item of personal property.

    Although James briefed this issue and contended both sales were void, the Court notes that at oral argument he conceded his remedy was damages against the personal representative for the personal property sale. *See supra*

(continued . . .)

*Factual Background*

[¶45.]     This case involves an estate that was informally probated.  As the personal representative, Wayne determined that the buildings on the estate's 132 acre homestead were in such extremely dilapidated condition that they constituted a drain on the estate.  It is undisputed, but unacknowledged by the Court, that Wayne did not sell the entire 132 acres.  Rather, he sold only the 6.17 acres on which the dilapidated buildings were situated.

[¶46.]     The real and personal property were sold at separate public auctions.  There is no allegation of impropriety in conducting the sales.  Although James was not provided with *formal* notice of the public auctions under SDCL 29A-3-204 and 715(b),[9] he waived his right to require that the estate be formally administered.

_____

(. . . continued)

¶34.  James's concession, however, does not prevent future disgruntled heirs from using today's decision to seek to void personal property sales.  Additionally, the Court's failure to explain how the same statute can apply differently to real and personal property will be of no comfort to future personal representatives who conduct similar, but properly noticed personal property sales thereby subjecting themselves to suits for damages.  Today's decision certainly creates an impossible situation for practitioners who must advise personal representatives whether they may sell personal property under wills that, very typically like this one, have a residuary clause leaving the bulk of the personal property to named relatives.

9.  The Court suggests that a formal notice of sale is required to be given to all heirs in UPC power of sale cases, stating Wayne conducted the sale "without the notice to the heirs as required by SDCL 29A-3-715(b) . . . ."  *Supra* ¶3.  However, that formal notice is only required when the fair market value of the property is not readily ascertainable, and then, the notice need only be given to those who have filed a demand for notice under SDCL 29A-3-204.  *See* SDCL 29A-3-715(b).

Although Wayne did not provide James with that formal notice under SDCL 29A-3-204 and 715(b), we have not been advised that any other heir made

(continued . . .)

Moreover, Wayne was specifically authorized to exercise the power of sale (statutory or otherwise) "without notice, hearing, or order of court." SDCL 29A-3-711. Finally, although James did file a demand for notice pertaining to the estate under SDCL 29A-3-204, that statute expressly provides that a failure to give notice does not *void* the sales. Rather, the remedy for failure to give notice under the statute is limited to damages. SDCL 29A-3-204.

[¶47.] In any event, James was provided notice of the filing of the summary of the public auctions and notice of the motion to confirm the sales. He appeared and objected to the confirmation of both sales. The circuit court confirmed the sales finding: (1) the land was a drain on the estate; (2) the sales were conducted in a reasonable manner; and (3) the land brought an exceptional price exceeding market value. Ultimately, the circuit court found, "[t]he evidence is abundant that the sale [of real property] was conducted for a good reason." These findings are significant because they are unchallenged on appeal and SDCL 29A-3-715(a) authorizes such sales if the personal representative was acting "reasonably for the benefit of the estate."

_____

(. . . continued)

such a demand pertaining to the estate. Moreover, Wayne's counsel sent a letter to all heirs (and James' attorney) advising them of Wayne's intent to liquidate some of the real and personal property and requesting input. Wayne's attorney sent this letter prior to the public sales. James did not object or respond to the request for input on the sales. Additionally, prior to the public auction, Wayne and James engaged in a telephone conversation regarding the sales. Thus, the circuit court specifically found that James was not credible in claiming that he was not informed of the possibility of the sales. James does not challenge this finding on appeal, and no other heir has appeared objecting to a lack of notice.

*The Majority's View of the Law*

[¶48.]     The majority does not dispute the circuit court's findings that both

sales fell within the "benefit of the estate" qualification for exercising the statutory

power of sale under SDCL 29A-3-715(a)(23).  Instead, the Court focuses on two

points in its attempt to justify voiding the real property sale.[10]  The Court first

---

10.     Interestingly, the Court cites the UPC and *Green v. Gustafson*, 482 NW2d
        842 (ND 1992), to support its position.  Specifically, this Court cites *Green*
        for the proposition that a personal representative's improper disposal of
        personal property of the estate does not void the sale:  the remedy is limited
        to damages.  *Supra* ¶34.  The Court, however, fails to acknowledge that
        *Green* applied that rule to an unauthorized sale of *real property*.  Therefore, if
        we were to follow *Green*, the sale of real property in this case, even if
        unauthorized, may not be void.  James' remedy may be limited to an action
        against the personal representative.  The North Dakota Supreme Court
        explained:

>       Section 30.1-18-15(6), N.D.C.C. [Unif. Probate Code § 3-715],
>       specifically authorizes the personal representative to "[a]cquire or
>       dispose of an asset, including land . . . , for cash or on credit, at public
>       or private sale"; and Section 30.1-18-15(23) provides that the personal
>       representative may "[s]ell, mortgage, or lease any real or personal
>       property of the estate or any interest therein."

>       Section 30.1-18-14, N.D.C.C. [Unif. Probate Code § 3-714], provides
>       broad protections to parties dealing with the personal representative:

>       "A person who in good faith either assists a personal representative or
>       deals with him for value is protected as if the personal representative
>       properly exercised his power. The fact that a person knowingly deals
>       with a personal representative does not alone require the person to
>       inquire into the existence of a power or the propriety of its exercise . . .
>       ."

>       The intent of these provisions is to adequately protect persons dealing
>       in good faith with a personal representative and to avoid the necessity
>       of court orders in routine probate administrations.  *See* 1 Wellman,
>       Uniform Probate Code Practice Manual 319 (2d ed 1977). As further
>       noted by Professor Wellman:

(continued . . .)

contends that three statutes vest specifically devised property in the specific devisee at the time of the testator's death. *See supra* ¶¶14-15. Second, although the Court acknowledges that SDCL 29A-3-715(a)(23) grants the power of sale, the Court creates "an important exception." *See supra* ¶17. According to the Court, even though there may be no language in a will expressly restricting the statutory power of sale, a specific devise of real property is so inherently inconsistent with a statutory power of sale that the specific devise impliedly trumps the power of sale as a matter of law. *See supra* ¶¶20, 26. Neither point is correct or supported by law.

[¶49.] With respect to vesting, the Court concludes, "the sale of specifically devised property [is] inconsistent with the specific devisees' right to receive the property in kind." *Supra* ¶10. The Court relies on SDCL 29A-2-606(a), SDCL 29A-3-906(a)(1), SDCL 29A-3-101,[11] and our interpretive decision *In re Estate of Roehr*,

_____

(. . . continued)

> "Section 3-714 explicitly protects purchasers from the possibility that a sale which a PR may have made was unnecessary or at too low a price *or even against the terms of a will*. The purchaser is explicitly excused from examining the terms of the will, court records relating to the appointment, or other sources that might be relevant to the question of whether the sale is proper as between the fiduciary and those entitled to the inheritance." 1 Wellman, Uniform Probate Code Practice Manual, *supra,* at 407.

*Id.* at 845 (emphasis added). Today's Court declines to consider the application of South Dakota's version of these UPC provisions.

11. SDCL 29A-2-606(a) in relevant part provides:

> (a) A specific devisee has a right to the specifically devised property in the testator's estate at death[.]

(continued . . .)

2001 SD 85, ¶8, 631 NW2d 600, 602-03 (stating the general rule that title to real property vests in a devisee on the death of a testator, subject to probate of the estate). The UPC and *Roehr* do not support the Court's conclusion.

[¶50.]      First, SDCL 29A-2-606 does not apply because that statute deals with the issue of ademption. *See* Unif. Probate Code §2-606, 8 ULA 427. Because all of Glenn's specifically devised property was still in existence at the time of death, construction of Glenn's will for purposes of ademption is not at issue, and the Court's reliance on the ademption statute is misplaced. Although the Court concludes that "the title of chapter 29-2" suggests otherwise, *see supra* n3, it is well established that such titles in codified statutes may not be used to determine a statute's meaning. Argus Leader v. Hagen, 2007 SD 96, ¶27, n5, 739 NW2d 475, 483 n5. "[T]itles whether designating entire titles, parts, chapters, sections, or subdivisions, constitute no part of any statute." SDCL 2-14-9.

---

(. . . continued)
    SDCL 29A-3-906(a)(1) in relevant part provides:

>    (a) Unless a contrary intention is indicated by the will, the distributable assets of a decedent's estate shall be distributed in kind to the extent possible through application of the following provisions: (1) A specific devisee is entitled to distribution of the thing devised[.]

    SDCL 29A-3-101 provides in part:

>    Upon the death of a person, that person's real and personal property devolves to the persons to whom it is devised by will . . . subject to homestead allowance, exempt property and family allowance, rights of creditors, elective share of the surviving spouse, and administration.

[¶51.] Second, although SDCL 29A-3-101 does provide that real and personal property generally devolves to specific devisees, it also recognizes that the specific devisees' rights are conditional: the property devolves to specific devisees "subject to. . . administration." *Id.* And, because "[t]he title of the heir or devisee. . .is 'subject to administration'; . . . it remains encumbered so long as the estate is in administration or is subject to further administration." 1 Richard V. Wellman, *Uniform Probate Code Practice Manual*, 318 (2d ed 1977). "'Thus, 'title' and 'power to possess and control' are to be distinguished.'" Feickert v. Frounfelter, 468 NW2d 131, 132 (ND 1991) (quoting *Wellman, supra,* at 316). For the same reason, it is generally recognized that because the property remains encumbered and subject to administration, the power of sale controls over a specific devise. As the North Dakota Supreme Court concluded, UPC § 3-101 (SDCL 29A-3-101) does not limit the power of sale given to administrators in UPC § 3-715 (SDCL 29A-3-715). *Green, supra,* 482 NW2d at 846 n3. On the contrary, "'the right to possession and control' of the decedent's estate is vested in the P[ersonal] R[epresentative] by Section 3-709."[12] *Feickert,* 468 NW2d at 132.

---

12. SDCL 29A-3-709 provides in part:

> Except as otherwise provided by a decedent's will, every personal representative has a right to, and shall take possession or control of, the decedent's property, except that any real property or tangible personal property may be left with or surrendered to the person presumptively entitled thereto unless or until, in the judgment of the personal representative, possession of the property by the personal representative will be necessary for purposes of administration.

[¶52.] Finally, rather than supporting the Court's theory of vesting, SDCL 29A-3-906(a)(1) recognizes the personal representative's superior power to possess and control specifically devised property. The statute provides that the "assets of a decedent's estate shall be distributed in kind *to the extent possible. . . .*" (Emphasis added.) The official comment to UPC § 3-906 explains that an in-kind distribution is only a preference. "This section establishes a preference for distribution in kind. It directs a personal representative to make distribution in kind whenever feasible and to convert assets to cash only where there is a special reason for doing so." Unif. Probate Code § 3-906, 8 ULA 273 cmt (1997).

[¶53.] Therefore, none of these statutes override the power of the personal representative to administer the estate, including exercising the statutory power to sell when there is a special reason; i.e., it is of benefit to the estate.[13] This conclusion is confirmed by *Roehr*, where this Court recognized that vesting is conditional and subject to the probate of the estate. 2001 SD 85, ¶6, 631 NW2d at 602. Consequently, today the Court is incorrect in suggesting that specifically devised real property vests in specific devisees such that it voids a sale of property sold under the power of sale granted in SDCL 29A-3-715(a)(23), even when it is reasonably necessary for the estate.

---

13. The majority believes that the sale of specifically devised property in this case "would essentially nullify the provisions of SDCL 29A-2-606(a) and 29A-3-906(a)(1)." *Supra* ¶17. The Court is mistaken because this is not a case involving ademption under SDCL 29A-2-606(a), and SDCL 29A-3-906(a)(1) specifically contemplates such sales when the trial court finds it is in the best interests of the estate. *See supra* ¶52.

[¶54.]    With respect to the consistency of a specific devise and a power of sale, the Court fails to acknowledge that we have long held that notwithstanding the conditional vesting in the specific devisee, it "does not make the power of sale repugnant to the specific devise." *Kappenmann*, 82 SD at 97, 141 NW2d at 783. Instead of following precedent, the Court creates a new and "important exception" for specifically devised property. *See supra* ¶17. Even though this "specific devise exception" is not found in Glenn's will or the UPC, the Court imposes one on SDCL 29A-3-715(a), reasoning that a specific devise "inherently conflicts with the statutory power of sale, for it is an indication of the testator's intent that the real property not be sold." *Supra* ¶20.

[¶55.]    The Court's theories of inconsistency and resulting, implied exception are premised upon inapplicable cases. As previously indicated, those cases are cited for the propositions that: (1) "no such power [of sale] exists as to real property specifically devised"; (2) "a general power authorizing the sale or rental of any property which the testator possessed at the time of death applies only to property not specifically devised"; and (3) "real property specifically devised is not subject to general power of sale granted to executors." *See supra* ¶18 (citing Brown v. Bailey, 2 FiducRep 342, 84 Pa D&C 269, 274, 1953 WL 4538, at *3 (PaComPl 1953); *In re* Estate of Radjenovich, 1991 WL 70304, at *1 (MinnCtApp) (unpublished); *In re* De Forest's Estate, 147 Misc 82, 88, 263 NYS 135, 142 (NYSur 1933); Wilkinson v. Chambers, 181 Pa 437, 442, 37 A 569, 569 (Pa 1897); *In re* Estate of Gamble, 183 So2d 849, 852 (FlApp 1966); *In re* Chaney's Estate, 36 SW2d 709, 711

(TexComm'nApp 1931)).  None of these cases support the extreme propositions adopted by this Court.

[¶56.]     The Court's first proposition that "no power of sale exists to real property that is specifically devised" comes from a 1952 Pennsylvania trial court case.  That case is, however, unsupported by any Pennsylvania case law.  It is also clearly distinguishable.  In *Bailey*, the executor sought to eject a defendant who was in possession of real estate by a conveyance from the testator.  In analyzing the Pennsylvania Fiduciaries Act of 1949, the court expressly noted that *factually*, there was *no reason to sell the property*.

> One of the purposes of the Fiduciaries Act of 1949 undoubtedly is to permit the personal representative to take possession and conserve real estate, not only for the benefit of the heirs or devisees but for the benefit of the estate if it should be necessary to convert it for the purposes of administration and distribution. Possession of *this* real estate by the executrix, however, *could serve no useful purpose* in the administration of the estate under the *facts* existing in this case.

*Bailey,* 2 FiducRep 342, 84 Pa D&C 269, 276, 1953 WL 4538, at *5 (PaComPl 1953).  Therefore, *Bailey* only involved a factual dispute concerning what was in the benefit of the estate.  More importantly, by recognizing the personal representative's power in some factual cases, *Bailey* acknowledged the rule that when there is a "useful purpose," specifically devised property may be sold.  *Id.*

[¶57.]     The Court's second proposition that "a general power authorizing the sale . . . of any property which the testator possessed at the time of death applies only to property not specifically devised" is not supported for a number of reasons. First, the Court's cited authority, *Radjenovich*, is an unpublished Minnesota Court of Appeals decision.  1991 WL 70304, at *1 (MinnCtApp 1991) (unpublished).

Under Minnesota law, "[u]npublished opinions of the [Minnesota] Court of Appeals are not precedential." Minn. Stat. § 480A.08. Second, that specific proposition was only used as a part of a factual determination that a codicil to a will controlled the property in question, and therefore the power of sale in the original will did not apply to the devise of any real property. Finally, this cited proposition was based upon the 1903 decision in *In Re Scott Will*, 88 Minn 386, 388, 93 NW 109, 110 (1903). *Scott* contains no language even arguably close to the proposition cited by this Court.

[¶58.]     This Court finally cites *Wilkinson v. Chambers,* 181 PA 437, 37 A 569 (Pa 1897), for the proposition that a will cannot be interpreted so as to allow the executor to defeat a specific devise. *Wilkinson* is a one paragraph Pennsylvania case in which the only issue was whether a devise of property was fee simple or a life estate. *Id*. at 442. Therefore, the language adopted by this Court is taken out of context and is dictum.

[¶59.]     The Court's remaining authorities are not discussed or explained.[14] Ultimately, not one of the Court's cases supports its propositions of inherent

---

14.     *See supra* ¶18 (citing *In re De Forest's Estate*, *In re Estate of Gamble,* and *In re Chaney's Estate*).

    *De Forest's Estate* does not support the legal proposition that specifically devised property is not subject to a power of sale. That 1933 trial court case merely concluded that *factually*, in making a specific devise, that testator "did not comprehend" that the *devise* included the property at issue. Therefore, the court did not even consider the relationship between a specific devise and a power of sale, let alone conclude that legally, a specific devise is inconsistent with a power of sale. 147 Misc at 88, 263 NYS at 142. Such a conclusion would have been impossible because all New York authority on this issue concludes that the two are not inconsistent. *See infra* ¶¶64, 66.
                                        (continued . . .)

inconsistency such that a personal representative's power of sale only relates to property not specifically devised. On the contrary, as is explained below, the law has been well settled both before and after the UPC that a power of sale and a specific devise are not inherently inconsistent or repugnant. The former may be exercised over the latter when a power of sale exists and it is in the best interests of the estate.

_____

(. . . continued)

> *In re Estate of Gamble,* 183 So2d 849 (FlDistCtApp 1966), is clearly distinguishable. In *Gamble*, the issue was only whether a sale was also necessary to pay the cost of administration or to distribute the estate. The decision was dependent upon the distinction between a general and limited power of sale. Therefore, the court noted the limited nature of its inquiry:
>
> > The question with which we are confronted involves a determination of whether the power of sale granted [in] the executor in testator's will is a general power over which the probate court has no control, or whether it is a limited power under which the authority of the executor is restricted . . . ."
>
> *Id.* at 852. Because *Gamble* ultimately determined that the power was limited, the court only concluded that the power could not be exercised arbitrarily or capriciously; i.e. that the executor had no power "to liquidate any or all property of the estate under circumstances which serve no purpose other than to require the inheritance of the [specific] legatees to be distributed to them in cash rather than kind." *Id.* at 853. This holding is in complete harmony with SDCL 29A-3-715(a)(23), which similarly requires that the sale not be arbitrary: it must reasonably benefit the estate. Consequently, *Gamble* does not stand for the proposition that specifically devised property may not be sold. It stands for the proposition that specifically devised property - even that property subject to a limited power of sale - may be sold as long as there is a reason and it is approved by the court.
>
> The Court finally refers to *In re Chaney's Estate*, 120 Tex 185, 36 SW2d 709 (TexComm'nApp 1931), for the proposition that specifically devised property is not subject to a general power of sale. In *Chaney*, however, the power of sale was not even at issue.

*Kappenmann*

[¶60.] This Court has already concluded in *In re Kappenmann's Estate* that a power of sale is not repugnant to a specific devise. 82 SD 91, 97-98, 141 NW2d 780, 783 (1966) (citing 5 Bowe, William J. and Parker, Douglas H. *Page on the Law of Wills*, § 45.10).[15] Our citation to *Page on the Law of Wills* specifically explains, "[w]here an express power of sale is given, but the purpose for which it is to be used is not specified, it is held to be a power of sale in order to pay the proceeds to the devisees in lieu of the devise, and, therefore, such a power of sale is not repugnant to the devise of the property in fee." *Id.* It should be further emphasized that the exact question in *Kappenmann* is the question before the Court today: whether "an executor may sell specifically devised real property, under a power of sale in a will [in our case, the analogous power in statute], where such sale is not necessary to pay debts and cost of administration, *and where there is no directive in the will to sell such devised property.*'" 82 SD at 93, 141 NW2d at 781 (emphasis added). *Kappenmann* resolved this question holding the property could be sold because the vesting of the property was only conditional, and the specific devise did not defeat the general power of sale. *Id.* at 97-98, 141 NW2d at 783.

[¶61.] This Court attempts to distinguish *Kappenmann* and the cases hereinafter cited in this dissent noting that the will in *Kappenmann* contained a power of sale and Glenn's will did not. Wayne, however, was granted an analogous power of sale by statute, and this Court offers no explanation how the statutory

---

15. *Kappenmann* has been cited as post-UPC authority. *See In re Estate of Roehr*, 2001 SD 85, ¶7, 631 NW2d at 602.

power to sell without notice is different than the power of sale considered in *Kappenmann.* A careful reading of *Kappenmann* establishes that the statutory power of sale is not materially different than the power granted by the will in *Kappenmann.* The statutory power and the power in the will are analogous because: (1) *Kappenmann* construed a will "*where there [was] no directive in the will to sell such devised property,*" 82 SD at 93, 141 NW2d at 781 (emphasis added) (citations omitted); and (2) there is no material difference in the UPC power of sale statute and the pre-UPC power of sale statutes construed in *Kappenmann.* *Compare* SDCL 29A-3-715 and 29A-3-711 (granting exercise of statutory power of sale without notice, hearing or order of the court) *with* SDC 1960 Supp §§ 35.1501 (SDCL 30-22-6) and 35.1527 (SDCL 30-22-1) (both repealed, 1995) (governing power of sale in a will and power of sale when not provided in the will). Because the wills and statutes construed in *Kappenmann* and this case are silent concerning the sale of specifically devised property, pre-UPC case law is apposite.[16] Moreover, the majority simply fails to acknowledge the only difference in the powers of sale is that before the UPC was adopted, personal representatives did not possess a power of sale unless it was included in the will. After the UPC, that power is granted unless the will provides otherwise. *Compare* SDCL 30-22-1 (repealed 1995) (authorizing power of sale when given in the will) *with* SDCL 29A-3-715(a)(23) (authorizing power of sale when not given in the will).

---

16. It is ironic that the Court purports to distinguish this dissent's cases because they are mostly "pre-UPC and the wills in those cases expressly granted the personal representative a power of sale," *supra* ¶21. *All* of the Court's cases are pre-UPC.

[¶62.] The Court, however, suggests that other courts recognize "a distinction between a testator granting the power of sale as opposed to a statute," and in such cases "the specific devise *must* be distributed in kind." *Supra* ¶23 (citing *In re Estate of Polly*, 511 So2d at 756 and *In re Estate of Gamble,* 183 So2d 849). Neither case supports the Court's view. *Polly* is inapplicable because: no statutory power was even considered; although the will in *Polly* contained a power of sale, it did not concern the property at issue; and *Polly* construed a Florida statute that, like our pre-UPC law, only allowed the exercise of a power of sale when it was provided by a will. Thus, the issues were not the same, *Gamble* is distinguishable, and it supports this dissent. *See supra* n14.

[¶63.] The Court further suggests that making a specific devise subject to a power of sale may threaten intended specific distributions. The Court goes so far as to propose a red herring that a personal representative "could sell a family heirloom [or land that had been in the family for generations] that was specifically devised . . . as long as he or she was acting reasonably for the benefit of the estate." *Supra* ¶26. This suggestion simply fails to give effect to the language of SDCL 29A-3-715. Although the Court pays lip service to the statute's limiting language that a personal representative would have to prove such sales of family heirlooms or land were *necessary* for the estate, such a finding could not be made. Obviously, under the facts in the Court's examples, it would be unnecessary to sell such property to administer the estate.

[¶64.] Testators often give powers of sale that affect specifically devised property without making specific reference to the property. A New York case

exhaustively explained why such powers are given and why the benefit to the estate

protection is sufficient, even when the devise is for a spouse and children.

> Had the intention of the testator been to restrict the power of sale [as is permitted under SDCL 29A-3-715] to the necessities of the trust [for his wife and children], he would have undoubtedly so expressed himself, or would at least have given the power in connection with the trust, and not left it to a later and entirely disconnected provision of his will wherein he gave his personal representatives the power to sell and dispose of his real estate for the 'best interests' of his 'estate.'
>
> Good reasons suggest themselves why the testator might well have wished to confer upon his personal representatives a general power of sale for the purpose of a distribution of his estate among the residuary legatees and devisees. On the death of testator's wife the will gave, devised and bequeathed all of the trust estate unto the children of the testator then living and to the issue of any of them who might then be deceased in equal shares per stirpes and not per capita. In case any such taker should be an infant, the acquiring of the title of such would involve a complicated and expensive court proceeding, which the testator might well have wished to avoid. He might also have foreseen discord among the residuary owners and the necessity of resorting to an expensive action in partition with attendant delay in order to obtain a sale of the real property and a division of the proceeds among those entitled thereto. Indeed, it appears that between the date of the making of the contract of sale and the time therein fixed for the passing of title, one of the testator's children did actually commence an action in the Supreme Court for a partition of the real property of which decedent died seized, including the contracted premises. Thus the possible fears of the testator that all would not be harmonious among those who would eventually succeed to his real property seem justified by succeeding events. By the power of sale in the will the testator provided a way for the disposal of his estate by his trusted representatives at a nominal expense and thereby sought to save long delay and considerable expense which might otherwise result. Such are the reasons which usually give birth to powers of sale in wills. Certain it is that the testator in no way confined the exercise of the power of sale to the execution of the trust, but on the contrary made the same in the most general way for the benefit of his whole estate.

Hutkoff v. Winmar Realty Co., 211 AD 726, 728-729 (NYAppDiv 1925).

[¶65.]      Missouri provides another reason why the power of sale may prevail. In *Estate of Basler v. Delassus*, 690 SW2d 791 (Mo 1985), the specific devisees objected to the sale of the property under a power of sale. The Missouri Supreme Court reversed a lower court's holding that the real property in issue "passed from the testatrix to the four devisees and that the personal representative had no authority to convey it elsewhere[.]" *Basler*, 690 SW2d at 793. In rejecting that proposition, the Missouri Supreme Court explained that joint devisees do not have a right to specific enjoyment since any one of them could demand partition. *Id.* Thus, good reasons exist why powers of sale may be exercised over specifically devised property. Such powers are given to avoid problems relating to discord among heirs, to ease the disposition of property when minors are involved, to thwart expense and complications of partition proceedings, to avoid delay, and to benefit the entire estate.

*No "Inconsistency" or "Inherent Conflict" Exists*

[¶66.]      For the foregoing reasons, and notwithstanding this Court's belief that confirming Glenn's estate sale would "reverse" a "century old doctrine," *see supra* ¶12, the opposite is true. For more than a century, the law has recognized no repugnancy between a devise in fee and a power of sale (even when the specific devise was intended for the surviving spouse and children).

> [T]here can be no doubt of the validity of the power of sale. *There is no repugnancy between a devise in fee and a subsequent power of sale given to the executor for the benefit of the devisees.* This is a common incident of testamentary dispositions. The title to the lands vested in the widow and children of [decedent] under the devise, and was a fee, subject to the power of sale given to the executor. In case of a sale under the power the title

of the devisees in the land would be divested and an interest in the proceeds substituted.

*Mellen v. Mellen*, 94 Sickels 210, 219-20, 34 NE 925, 928 (NY 1893) (emphasis added) (citing Crittenden v. Fairchild, 41 NY 289 (1869)). The **c**ases have consistently held that specific devisees take subject to a representative's power of sale.

> Undoubtedly, under the terms of the will of the testator, his real property, upon the termination of the trust for the benefit of his widow, vested in his children and the issue of any of them then deceased, per stirpes. But such vesting of title was subject to the exercise by plaintiffs of the power of sale contained in said will.

Hutkoff, 211 AD at 728-729. *See also* Cusack v. Tweedy, 126 NY 81, 26 NE 1033 (NYAppDiv 1891); Hetzell v. Easterly, 66 Barb 443 (NY 1867); *In re* McLaughlin's Estate, 193 Misc 192, 82 NYS2d 784 (NYSur 1948); Weinstein v. Hunter, 276 AD 471, 476, 96 NYS2d 1 (NYAppDiv 1950).

[¶67.] Similarly, for almost 100 years, Kentucky has recognized that a power of sale is not inconsistent with a specific devise.

> [A] power given by will to an executor to sell all or any portion of the residuary estate is not affected by the devise of such residuary share; for the devise is to be construed as subject to the power of sale. Nor is a power of sale in executors necessarily inconsistent with a specific devise in fee.

Stofer v. Stiltz, 179 Ky 399, 200 SW 631, 632 (KyCtApp 1918) (quoting 31 Cyclopedia of Law and Procedure 1049 (1909)). *Stofer* explained:

> [When real property] is given in clear language sufficient to convey an absolute fee . . . [and] [t]he power given the executor to sell and convey is not in vague, general, or indefinite expressions . . . [t]he only construction necessary is to reconcile, if possible, any inconsistency in the two positive and unambiguous sections; and this can be done upon authority by

> holding that . . . the devisees took the [real property] in fee, subject to the power of sale given to the executor . . . .

*Id.* *See also* Davis v. Scavone, 149 Me 189, 192, 100 A2d 425, 426-27 (1953) (concluding that devises are subject to power of sale).

[¶68.]    Although Glenn's will was governed by the UPC, the UPC did not change this doctrine. The UPC only makes the power of sale statutory. Therefore, under the UPC, testators are now required to draft their wills to explicitly limit, restrict, or eliminate this power of sale if that is their intent. SDCL 29A-3-715 (providing the power of sale "except as restricted or otherwise provided by the will[.]"). Glenn's will did not "restrict" or "otherwise provide" that Wayne could not exercise the power of sale with respect to the real or personal property. Therefore, Wayne was authorized to sell specifically devised property as long as it was reasonably for the benefit of the estate. Without any evidentiary support (because there was no testimony of the testator's intent in this case), this Court disregards SDCL 29A-3-715 by declaring that by a naked specific devise, Glenn "stated his testamentary intent to restrict [this] sale." S*upra* ¶25. As was demonstrated above, no case supports the Court's declaration.

[¶69.]    Although the Court also suggests that *this family* had a "historical and sentimental attachment to this land" and Glenn wrote his will "[w]anting to keep this farm in the family," *see supra*, ¶¶2, 27, neither assertion is supported by the record. At the hearing regarding the confirmation of the sales, no testimony or evidence was offered even suggesting that Glenn wanted to keep the farm in the family. Nor was there any evidence of any "sentimental attachment" to the land. The evidence suggests the opposite. As previously indicated, Wayne sent a letter to

*all* of the heirs prior to the auction in August of 2003, indicating his intent to sell the land and requesting any thoughts or input the heirs may have had regarding his intent to sell. At the hearing, it was unrefuted that only one of the seven heirs – James – even responded. Further, it was also unrefuted that five of the seven heirs approved of the sale.[17] This Court's appellate finding of this family's "sentimental attachment" is clearly unsupported.

[¶70.] In the case before the Court today, one of the devisees apparently did not agree that the dilapidated buildings were a drain on the estate and should be sold. The personal representative, exercising his statutory power of sale -- which is materially identical to the common-law power of sale -- presented that dispute to the circuit court. The circuit court found that it was in the best interest of the estate and therefore concluded that there was authority to sell under SDCL 29A-3-715. Absent a challenge to the circuit court's factual best interest determination, all pre-and post-UPC decisions specifically examining similar powers of sale agree with the circuit court's conclusion.

[¶71.] Although the caselaw, our own precedent, and the UPC require this conclusion, this Court finally contends that the statutory power of sale is only exercisable when the heirs agree or "it [is] necessary to satisfy the debts of the estate." *Supra* ¶28. In doing so, the Court overlooks our decision in *Kappenmann* and the broader language in SDCL 29A-3-715(a) that do not incorporate such

---

17. Aside from James Olson, the only other heir who did not approve of the sale was Gary Eugene Olson. At the hearing, however, Gary indicated that he was not interested in buying the property.

restrictions. They only require that the sale reasonably benefit the estate. California courts, construing a similar provision, confirm this Court's error.

[¶72.] California Probate Code § 754 is similar to SDCL 29A-3-715. Section 754 provides, "'[W]hen it is for the advantage, benefit, and best interest of the estate and those interested therein that any property of the estate be sold, the executor or administrator may sell the same[.]'" Estate of Barthelmess, 198 CalApp3d 728, 734-35, 243 CalRptr 832 (1988) (opinion modified on denial of rehearing). In interpreting that statute, California courts have explained that the "necessity to sell the residence in order to pay debts . . . simply is not a relevant consideration in determining the propriety of the sale in this case. The sale may be upheld on the basis of the finding it was in the best interest of the estate[.]" *Id*. at 735. *See also In re* Da Roza's Estate, 82 CalApp2d 550, 553, 186 P2d 725, 727 (1947) (citing § 754 and concluding: "The administratrix was authorized to sell the lots . . . for the 'advantage benefit and best interests of said estate,' regardless of whether there were funds in the estate sufficient with which to pay all debts and expenses of administration."). These courts recognize, as we did in *Kappenmann*, that a power of sale may be exercised over specifically devised property for reasons other than the payment of debts and administration. And, there is certainly no language in SDCL 29A-3-715 (a)(23) or common law supporting today's decision requiring unanimous consent to sell each piece of specifically devised real and personal property.

[¶73.] Until today, South Dakota followed the UPC and the caselaw underlying the UPC and powers of sale. The effect of today's decision, however, is

that even if advance notice of sale is given, there is no power to sell specifically devised real or personal property under SDCL 29A-3-715(a)(23) unless there are specific directions to do so in the will and the sale is necessary to pay estate debts or the heirs agree it is for their best interests as well as that of the estate. Otherwise, according to the Court, sales of specifically devised property are void.[18] This was not the law before the adoption of the UPC, and it is not the law under the UPC. I therefore dissent, only joining the Court's opinion on Issue 3.

[¶74.] KONENKAMP, Justice, joins this dissent.

---

18. Interestingly, the 6.17 acres at issue were conveyed to the buyer by the personal representative's deed over two years ago. This Court unequivocally voids that sale, but remands to "allow the third-party purchaser the opportunity to intervene and protect his or her interest." *Supra* ¶29. This Court owes the parties and the circuit court some explanation and guidance on how they may accomplish this task on remand in light of SDCL 29A-3-712 and 714, the latter providing:

> A person who in good faith either assists a personal representative or deals with a personal representative for value is protected as if the personal representative was properly authorized to act. The fact that a person deals with a personal representative with knowledge of the representative capacity does not alone require the person to inquire into the existence of a power or the propriety of its exercise. Except for restrictions on powers of supervised personal representatives which are endorsed on letters as provided in § 29A-3-504, no provision in any will or order of court purporting to limit the power of a personal representative is effective except as to persons with actual knowledge thereof. A person is not bound to see to the proper application of estate assets paid or delivered to a personal representative. The protection here expressed extends to instances in which some procedural irregularity or jurisdictional defect occurred in proceedings leading to the issuance of letters, including a case in which an alleged decedent is found to be alive.